THOMAS C. DUNLAP, SR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dunlap v. Commissioner
Docket No. 3216-92
United States Tax Court
T.C. Memo 1993-187; 1993 Tax Ct. Memo LEXIS 190; 65 T.C.M. (CCH) 2523; April 27, 1993,Filed *190 An appropriate order and decision will be entered for respondent. Thomas C. Dunlap, Sr., pro se. For respondent: Amy Dyar Seals. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: This case is before the Court on petitioner's motion to continue and respondent's motion to dismiss for lack of prosecution. When the case was called from the calendar in Winston-Salem, North Carolina, on Monday, February 22, 1993, there was no appearance by or on behalf of petitioner. Respondent's counsel appeared and was heard at which time respondent moved to dismiss for failure to prosecute. We took both petitioner's motion to continue and respondent's motion to dismiss under advisement. They are related, since if we were to grant petitioner's motion to continue, we would clearly not be dismissing the case. Conversely, if we deny petitioner's motion, as we intend to do, then we must consider whether and to what extent respondent's motion should be granted. Procedural Background
On February 17, 1993, petitioner filed a motion to continue the case. The motion set forth a variety of personal reasons as grounds for the requested continuance. Petitioner did not attach to his motion *191 an affidavit or letter supporting any of the personal reasons given for the requested continuance. In an effort to be responsive to petitioner's motion, the Court tried repeatedly during the three days before trial to arrange a conference call between petitioner and respondent's counsel, Amy Dyar Seals. Ms. Seals, who had several out-of-town witnesses under subpoena, objected to the granting of the motion. The Court obtained what was believed to be a current telephone number where petitioner could be reached in order that we might attempt to set up a conference call to discuss petitioner's motion. Efforts were made on at least five occasions on February 17, and again several times on February 18 and 19 to reach petitioner. We were unsuccessful. However, the Court did leave messages on an answering machine at the number left by petitioner. As stated above, petitioner did not appear at calendar call. A brief history is in order here. On September 16, 1992, a notice setting case for trial was mailed to petitioner, advising him that this case would be set for trial February 22, 1993. On October 22, 1992, the Court granted respondent's motion for leave to commence discovery. *192 On November 3, in compliance with the guidelines set forth in Rule 70(a)(1) [1] and Branerton Corp. v. Commissioner, 61 T.C. 691 (1974), respondent wrote petitioner listing facts respondent believed were not in dispute and attached an informal document request and questions list. Petitioner failed to answer respondent's questions, to furnish the requested documents, or to contact respondent. Therefore, on November 23, 1992, respondent served written interrogatories upon petitioner and a formal request for production of documents. Petitioner did not respond. Respondent served requests for admissions on petitioner on December 11, 1992. Petitioner did not respond, and, under Rule 90(f) petitioner is deemed to have admitted the requested admissions. Freedson v. Commissioner, 65 T.C. 333, 335-336 (1975), *193 affd. 565 F.2d 954 (5th Cir. 1978). Respondent moved to compel answers to interrogatories and production of documents on January 11, 1993. On January 14, 1993, we granted respondent's motions and ordered petitioner to answer the interrogatories and produce the requested documents on or before February 10, 1993. We also stated in that order that so much of respondent's motions seeking sanctions would be heard at the trial session scheduled to commence February 22, 1993. We assume that petitioner's reference in his motion to the imposition of sanctions indicates he received the January 14 order, since that is the only reference to sanctions the Court has made. We find it hard to believe -- and petitioner does not contend -- that he did not receive either respondent's informal requests for production and answers to interrogatories or respondent's formal request for production and answers to interrogatories or respondent's motion to compel, which attached the request for production and interrogatories. The earlier requests were well before petitioner's personal problems. In all cases, the requests were the same and the response from petitioner *194 has been the same: silence. On the afternoon of February 22, 1993 (after the hearing), petitioner's wife telephoned the Court to say she had given birth to a baby on the previous Wednesday (February 17), and was home with the baby but could not be left alone for medical reasons. She also stated Mr. Dunlap was not at home because he was getting medicine for her. Mrs. Dunlap said she and petitioner had not received any of the Court's telephone messages until she returned from the hospital. At the Court's direction, the clerk advised Mrs. Dunlap that the Court would hear any argument her husband wished to make on the motions at 11:00 a.m. the next day, Tuesday. A few minutes later Mr. Dunlap called the Court to say he could not come to Court on Tuesday because he could not leave his wife. He was then told, again at the direction of the Court, that the case would be decided on the pleadings and the record. We will deny petitioner's motion to continue. Although his current personal circumstances appear to be difficult, petitioner has never, in the entire course of this case, shown any desire to cooperate in preparing for trial, or in complying with the Court's standing pretrial *195 order which requires the parties to meet informally and exchange documents before trial. There is nothing to indicate that if petitioner's motion to continue were granted anything would change. Moreover, we believe the record provides sufficient information for us to decide the merits of this case. Therefore, whether we treat respondent's motion as a motion to dismiss for lack of prosecution or a motion for summary judgment based upon the pleadings and admissions, the outcome would be the same. FINDINGS OF FACT Respondent asks us to find that there are due from petitioner deficiencies in income tax for the taxable years 1987, 1988, and 1989 in the amounts of $ 18,712, $ 12,355, and $ 11,305, respectively, and that there are additions to tax as follows: Additons to Tax
Year
Sec. 6651(f)
Sec. 6653(b)(1)(A)
Sec. 6653(b)(1)
Sec. 6654
1987
-  * $ 14,034
-  -  1988
-  -  $ 9,266
$ 789
1989
$ 8,479
-  -  766
*196 Alternatively, respondent seeks additions to tax for negligence under section 6653(a) and for failure to file under section 6651(a)(1). The following facts are found from petitioner's deemed admissions. At the time petitioner filed his petition he resided in Kannapolis, North Carolina. Petitioner did not file Federal income tax returns for 1987, 1988, or 1989. Petitioner's taxable bank deposits in 1987, 1988, and 1989 were $ 31,449, $ 20,891, and $ 23,854, respectively. In 1987, 1988, and 1989, loan payments were made on petitioner's behalf in the amounts of $ 32,328, $ 20,571, and $ 13,479, respectively. In 1987, 1988, and 1989, insurance payments were made on petitioner's behalf in the amounts of $ 2,881, $ 7,871, and $ 2,851, respectively. On March 2, 1990, petitioner was found guilty of one count of violating 18 U.S.C. sec. 371 (Klein conspiracy), for conspiring with James Eugene Lewis, Jr. and Lonnie Glen Schmidt to defraud the United States by impeding, impairing, obstructing, and defeating the lawful functions of the Internal Revenue Service in the ascertainment, computation, assessment, and collection of Federal income taxes. *197 Petitioner was also convicted of conspiracy to tamper with witnesses as well as three counts of witness tampering. During the years 1987 through 1989, petitioner derived income from the sale of "unincorporated business organization" (UBO) trusts, which were designed to assist buyers or "investors" in evading their income tax liabilities. The objective of the conspiracy was to be accomplished by using and causing others to use sham trust entities to conceal taxable income from the Internal Revenue Service. During the period of the conspiracy, petitioner and his co-defendants sold, promoted, and used the sham trusts. Each "UBO" investor paid from $ 3,500 to $ 5,000 to purchase one of the sham trusts. Petitioner represented to potential purchasers/investors that purchasing such trusts would permit them to pay whatever taxes they wanted to pay. While promoting the sham trusts, petitioner represented to potential purchasers that because the Federal income tax system is based on voluntarily compliance, no individual is legally required to file an individual income tax return. Petitioner promoted and sold the sham trusts as a device to enable individuals to evade their Federal income *198 tax liabilities and also to escape detection for so doing. During 1987, 1988, and 1989, petitioner and his brother, Tracy Dunlap, owned a chain of video rental stores called "The Video Station" from which petitioner derived income. The Video Station was treated as a UBO called "King's Crown". On or about December 1, 1986, petitioner mailed or caused to be mailed a Form SS-4 to the Internal Revenue Service Center in Philadelphia, Pennsylvania, to acquire an employee identification number for his UBO, King's Crown. On or about January 3, 1987, a deed was notarized by James E. Lewis, Jr., whereby petitioner supposedly transferred his personal residence into his UBO, King's Crown. Petitioner continued to make use of the home as his personal residence just as he had prior to the supposed transfer. On or about January 2, 1987, petitioner transferred the title on his 1983 Datsun Station wagon from his personal name into his UBO, King's Crown. James E. Lewis, Jr., notarized the assignment of title. Petitioner continued to use the automobile just as he had prior to transferring the title. During 1987 through 1989, petitioner derived income from the rental of mobile homes that he owned. *199 During the years in issue, the following bank accounts were in petitioner's control: Southern National Bank
Account No. 171-606637 (1987-1989)
Southern National Bank
Account No. 171-017752 (1987)
Federal Savings Bank
Account No. 0491003043 (1989)
Total deposits in these accounts were as follows: Bank
Year
Account No.
Total Deposits
Southern National
1987
171-606637
$ 69,395.47
Southern National
1987
171-017752
1,000.00
Southern National
1988
171-606637
20,891.87
Southern National
1989
171-606637
3,044.40
Federal Savings
1989
0491003043
25,647.54
During 1987 through 1989, petitioner's bank balances were as follows: Bank/Account Name
Date
Account No.
Balance
Federal Savings/King's Crown
12/31/89
10-0491003043
$  2,538.20
Southern National/Dunlap
1/1/87
171-017752
13,440.87
Southern National/King's Crown
1/1/88
171-606637
3,023.47
Southern National/King's Crown
1/1/89
171-606637
414.71
On financial statements submitted to Southern National Bank petitioner reported net worth as follows: February 27, 1986
--
$   858,500.00
August 15, 1987
--
1,513.150.00
August 31, 1987
--
1,800,450.00
April 1, 1988
--
1,800,840.00
*200 During 1987, 1988, and 1989, petitioner received income in the amounts of $ 66,658, $ 44,313, and $ 40,184, respectively, which petitioner failed to report to the Internal Revenue Service. During the years in issue, petitioner dealt extensively in cash in an effort to avoid creating a "paper trail" for law enforcement officials to follow. Petitioner failed to maintain complete and adequate records of his income-producing activities and to produce complete and adequate records to respondent in connection with the examination of his income tax returns for 1987 through 1989. Petitioner failed to report income tax liabilities for 1987, 1988, and 1989 in the amounts of $ 18,712, $ 12,355, and $ 11,305, respectively. OPINION Petitioner bears the burden of proof with regard to the amount of the deficiency and addition to tax for failure to pay estimated income tax under section 6654. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Since petitioner has not offered any evidence in the case, he has not met his burden of proving any error in respondent's determination as to the deficiencies and additions to tax under section 6654 for 1988 and 1989. *201 However, respondent bears the burden of proving an underpayment is due to fraud under sections 6653(b) and 6651(f). Sec. 7454(a); Rule 142(b); see Caplette v. Commissioner, T.C. Memo. 1993-46. Generally, if any part of the underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the underpayment. Sec. 6653(b)(1)(A) for 1987 and sec. 6653(b)(1) for 1988. In addition, section 6653(b)(1)(B) provides for an addition to the tax in an amount equal to 50 percent of the interest due on the portion of the underpayment attributable to fraud (1987 only). Petitioner's argument, as derived from his amended petition and reply to answer, is that the notice of deficiency is invalid because the Government used an indirect method to compute the taxes; that bank deposits cannot be used to support a deficiency determination; that "expert witness Johnson of IRS" said the trust is legal (refers to Exhibit D which was not attached); that the case is based on "illegal taping"; and that "the Government failed to prove a tax loss and Judge Potter threw it out." The latter statement refers to Exhibit *202 G of the amended petition, but there is no Exhibit G attached to the Court's copy. In his reply petitioner adds that the notice of deficiency is illegal because the OMB number thereon was out of date. Petitioner has not alleged a justiciable issue with respect to these allegations. They are either incorrect as a matter of law or irrelevant. Fraud is intentional wrongdoing on the part of the taxpayer, Powell v. Grandquist, 252 F.2d 56, 60 (9th Cir. 1958), or the intentional commission of an act or acts for the specific purpose of evading a tax believed to be owing. Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. T.C. Memo. 1984-601. Respondent has the burden of proving, by clear and convincing evidence, underpayments attributable to fraud for each taxable year. Akland v. Commissioner, 767 F.2d 618 (9th Cir. 1985), affg. T.C. Memo. 1983-249. To establish fraud respondent must prove that (1) an underpayment exists and (2) the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or *203 otherwise prevent the collection of taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Fraud is never presumed, but rather must be established by affirmative evidence. Edelson v. Commissioner, 829 F.2d 828 (9th Cir. 1987), affg. T.C. Memo. 1986-223. Direct evidence of the requisite fraudulent intent is seldom available, but fraud may be proved by circumstantial evidence. Spies v. United States, 317 U.S. 492, 499 (1943); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The taxpayer's entire course of conduct may establish the requisite intent. Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). In the present case, petitioner was a partner with his brother in their business called The Video Station, which had several locations and was *204 the main source of petitioner's income. The transferring of all his assets, home, and cars to the UBO trust under the name of King's Crown did not change the taxability of petitioner's income. Income must be taxed to the one who earns it. Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949). Determining the proper taxpayer is based upon which person or entity in fact controls the earning of the income, rather than the question of who ultimately receives the income. Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980). A taxpayer's creation and operation of a trust is indicative of fraudulent intent if the trust has no economic substance and is established merely for tax avoidance purposes. Brittain v. Commissioner, T.C. Memo. 1992-277. In the case at hand, petitioner established a trust in which to conceal all of his assets, including his income. Over the years, courts have developed various factors, or "badges", which tend to establish fraud. Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). These include: (1) A pattern of understatement of income; *205 (2) inadequate books and records; (3) failure to file tax returns; (4) concealment of assets; (5) failure to cooperate with tax authorities; (6) income from illegal activities; (7) implausible or inconsistent explanations of behavior; (8) an intent to mislead which may be inferred from a pattern of conduct; (9) lack of credibility of the taxpayer's testimony; and (10) dealings in cash. Laurens v. Commissioner, 889 F.2d 910, 913 (9th Cir. 1989), affg. Norman v. Commissioner, T.C. Memo. 1987-265; Edelson v. Commissioner, supra at 832; Bradford v. Commissioner, supra at 307; Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989); Rowlee v. Commissioner, supra at 1125. These badges of fraud are nonexclusive. Miller v. Commissioner, 94 T.C. 316, 334 (1990). Most of the badges enumerated are here present. There is a pattern of failure to file personal income tax returns, the use of trusts to conceal income, failure to cooperate with the taxing authorities, petitioner's *206 conviction for conspiring to defraud, impede, impair, and obstruct the Internal Revenue Service by sale of the trusts, failure to keep books and records of income-producing activities, and dealing extensively in cash. Moreover, we note that petitioner filed financial statements on which he claimed to have a net worth in excess of $ 1.5 million in 1987 and 1988. For the above reasons, we sustain the addition to tax for fraud for each of the years for which it was determined. We also find that the full amount of the underpayment for 1987 is attributable to fraud. Section 6651(f) states that "If any failure to file any return is fraudulent," the taxpayer is liable for an addition to tax of 15 percent per month (not exceeding 75 percent in the aggregate) of the amount of tax required to be shown on the return. Respondent has met her burden of proving that the underpayment was due to fraud; hence, we hold petitioner liable for the increase in penalty for fraudulent failure to file under section 6651(f) for 1989. Respondent's motion to dismiss for failure to prosecute will be granted. *207 An appropriate order and decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
*. Plus 50% of the interest due on $ 18,712 for 1987 under sec. 6653(b)(1)(B)↩.