T.C. Memo. 1997-49

UNITED STATES TAX COURT

RICHARD AND BRENDA NELON, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1253-94.                    Filed January 28, 1997.

<u>E. K. Morley</u>, for petitioners.

<u>Amy J. Sargent</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  In a notice of deficiency dated October 21, 1993, respondent determined the following income tax deficiencies and additions with respect to petitioner Richard Nelon's Federal income taxes:

| | | Additions to Tax | | | |
|---|---|---|---|---|---|
| | | Sec. | Sec. | Sec. | Sec. |
| Year | Deficiency | 6651(f) | 6653(b)(1)(A) | 6653(b)(1) | 6654 |
| 1986 | $77,772 | -0- | [1]$58,329 | -0- | $3,762 |
| 1988 | 75,917 | -0- | -0- | $56,938 | 4,855 |
| 1989 | 90,355 | $67,766 | -0- | -0- | 6,110 |
| 1990 | 79,886 | 59,915 | -0- | -0- | 5,261 |
| 1991 | 96,053 | 72,040 | -0- | -0- | 5,526 |

[1] In addition, with respect to the taxable year 1986, respondent has determined an addition to tax pursuant to sec. 6653(b)(1)(B) in an amount equal to 50 percent of the interest due on the underpayment attributable to fraud.

Respondent also determined a deficiency and additions to tax against petitioners, jointly, for the 1987 taxable year.

| | | Additions to Tax | |
|---|---|---|---|
| | | Sec. | Sec. |
| Year | Deficiency | 6653(b)(1)(A) | 6661 |
| 1987 | $93,523 | [1]$70,142 | $23,381 |

[1] Respondent also determined, with respect to the taxable year 1987, an addition to tax pursuant to sec. 6653(b)(1)(B) in an amount equal to 50 percent of the interest due on the underpayment attributable to fraud.

Finally, as an alternative position, respondent determined that if the Court does not find liability for sections 6651(f) and/or 6653(b), then the delinquency addition to tax should apply in each year and the negligence addition should also be applied for 1986, 1987, and 1988.

After concessions, the remaining issues for our consideration are:  (1) Whether petitioner Richard Nelon is liable for additions to tax for fraud under section 6653(b)(1)(A)[1] and (B) for the taxable years 1986 and 1987 and

[1] Section references are to the Internal Revenue Code in effect for the taxable years at issue.  Rule references are to this Court's Rules of Practice and Procedure.

under section 6653(b)(1) for the taxable year 1988; (2) whether petitioner Richard Nelon is liable for additions to tax for fraudulent failure to file income tax returns under section 6651(f) for the taxable years 1989 through 1991; (3) whether petitioner Richard Nelon is liable, in the alternative, for a 25-percent addition to tax under section 6651(a)(1); and (4) whether petitioner Richard Nelon is liable, in the alternative, for a 5-percent addition to tax under section 6653(a)(1)(A) and (B) for 1986 and 1987 and section 6653(a)(1) for 1988.

FINDINGS OF FACT[2]

Petitioners Richard and Brenda Nelon resided in Rutherfordton, North Carolina, at the time the petition in this case was filed.[3]  Richard Nelon (petitioner) left high school when he was 16 years old, and he is inexperienced in bookkeeping and financial matters.  Petitioner operated a logging business in the area around Rutherfordton as a sole proprietorship.  This activity was his primary source of income during the years 1986 through 1991.  The activity in question was physically demanding and dangerous work.  In practice, petitioner would have to cut the standing timber, put it on the truck, and deliver the logs to the yard.

---

[2] The stipulations of facts and the exhibits are incorporated by this reference.

[3] Brenda Nelon is a party only with respect to the 1987 tax year.

Petitioner received compensation in the amounts and years at issue:

| Year | Amount | Payer |
|------|--------|-------|
| 1986 | $24,026 | Bristol Industries, Inc. |
| 1986 | 142,338 | Gilkey Lumber Co. |
| 1987 | 249,006 | Gilkey Lumber Co. |
| 1988 | 241,859 | Gilkey Lumber Co. |
| 1989 | 293,790 | Gilkey Lumber Co. |
| 1990 | 254,340 | Gilkey Lumber Co. |
| 1991 | 295,872 | Gilkey Lumber Co. |

The payers supplied Forms 1099 to respondent and petitioner reflecting the above-listed payments. During the aforementioned years, petitioner did not make any estimated payments of income tax. Petitioner also did not file any income tax returns for the years at issue. Petitioner maintained some records of his expenses for his logging business in the form of receipts, which he could not locate for purposes of trial.

Sometime in 1985, petitioner hired Larry R. Melton (Melton) to paint his residence. Melton, who was not a qualified tax adviser, was involved in a tax protester group. The primary precept of members of the protester group was that they were not subject to Federal income taxes. Consonant with that belief, Melton advised that petitioner was not required to pay taxes to the U.S. Government. Petitioner accepted Melton's advice, and he joined the protester group, attended meetings, and paid dues during 1987 and 1988. Beginning with his 1986 taxable year, petitioner did not file a Federal income tax return in accord

with his belief that he was not subject to the Federal income tax.

An accountant prepared petitioner's 1985 Federal income tax return. In 1989, respondent audited petitioner's 1985 return. Petitioner represented himself in the audit process and did not agree with the adjustments respondent's agent proposed or that he owed additional tax for his 1985 tax year. Petitioner believed that his income and deductions for 1985 had been correctly reported. Petitioner took no further action, the additional tax was assessed, and respondent seized petitioner's bank account for satisfaction of the assessed deficiency. The results of his 1985 audit during 1989 made petitioner angry and frustrated. Because of that experience and following the seizure of the proceeds of his bank account in 1989, petitioner chose to no longer maintain a bank account.

On June 15, 1992, respondent's agent, David Walden (Walden), advised petitioner by letter that his 1986 through 1991 tax years were being subjected to examination. Brenda Nelon's 1987 taxable year was also under examination by Walden. By a June 25, 1992, letter, Walden was advised that petitioner was under no obligation to communicate with respondent's agents and that petitioner was not subject to the Federal income tax. The letter also acknowledged that petitioner did not file Federal income tax returns for the years in question. The letter was written by

another person but was signed by petitioner.  Petitioner did not meet with Walden or produce requested records or documents.

On October 21, 1993, respondent issued a statutory notice of deficiency to petitioner, determining deficiencies in income tax for the 1986, 1988, 1989, 1990, and 1991 tax years and related additions to tax.  On the same date, respondent also issued a statutory notice of deficiency to both Richard Nelon and Brenda Nelon for the taxable year 1987, determining a deficiency in income tax and related additions to tax.

At trial, petitioner acknowledged that he did not file income tax returns for 1986 through 1991 and that he followed the advice of Melton and the protester group that he did not have to pay income taxes.  After trial, the parties filed a stipulation of settled issues.  Among the issues settled, respondent conceded that there was no deficiency in income tax due from, nor overpayment due to, petitioner Brenda Nelon for the taxable year 1987.  The parties also stipulated that petitioner was entitled to deductions in connection with his logging business, as follows:

| Year | Amount |
| --- | --- |
| 1986 | $127,038 |
| 1987 | 189,342 |
| 1988 | 188,927 |
| 1989 | 218,969 |
| 1990 | 194,088 |
| 1991 | 210,687 |

OPINION

The parties have agreed that petitioner earned income and incurred deductions for the 1986 through 1991 taxable years. The only remaining controversy is whether petitioner is liable for the addition to tax for fraud or, in the alternative, negligence and failure to file. For 1986 and 1987, section 6653(b)(1)(A) and for 1988 section 6653(b)(1) provide for an addition to tax in an amount equal to 75 percent of the underpayment that is attributable to fraud. For 1986 and 1987, section 6653(b)(1)(B) provides for an additional amount equal to 50 percent of the interest due on any part of the underpayment attributable to fraud. Section 6653(b)(2) provides that if any portion of an underpayment is due to fraud, the entire underpayment is treated as fraudulent, unless the taxpayer proves some portion of the underpayment is not due to fraud.

For 1989, 1990, and 1991, section 6651(f) provides for a maximum addition to tax of 75 percent if any failure to file is fraudulent. If the failure to file is not due to reasonable cause and it is not fraudulent, section 6651(a) provides for a maximum addition to tax of 25 percent.

The addition to tax in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of

investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938).

Respondent bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). Respondent's burden is met if it is shown that petitioner intended to evade taxes known to be due and owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes, and that there is an underpayment of tax. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Acker v. Commissioner, 26 T.C. 107, 112 (1956).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Fraud is never presumed but, rather, must be established by affirmative evidence. Edelson v. Commissioner, 829 F.2d 828 (9th Cir. 1987), affg. T.C. Memo. 1986-223. Direct evidence of the requisite fraudulent intent is seldom available, but fraud may be proved by circumstantial evidence. Spies v. United States, 317 U.S. 492, 499 (1943); Rowlee v. Commissioner, supra at 1123. The taxpayer's entire course of conduct may establish the requisite intent. Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969).

Over the years, courts have developed various factors, or "badges", which tend to establish fraud. <u>Recklitis v. Commissioner</u>, 91 T.C. 874, 910 (1988). These include: (1) A pattern of understatement of income; (2) inadequate books and records; (3) failure to file tax returns; (4) concealment of assets; (5) failure to cooperate with tax authorities; (6) income from illegal activities; (7) implausible or inconsistent explanations of behavior; (8) an intent to mislead which may be inferred from a pattern of conduct; (9) lack of credibility of the taxpayer's testimony; (10) dealings in cash. <u>Laurins v. Commissioner</u>, 889 F.2d 910, 913 (9th Cir. 1989), affg. <u>Norman v. Commissioner</u>, T.C. Memo. 1987-265; <u>Edelson v. Commissioner</u>, <u>supra</u> at 832; <u>Bradford v. Commissioner</u>, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 699 (1989); <u>Rowlee v. Commissioner</u>, <u>supra</u> at 1125. These badges of fraud are nonexclusive. <u>Miller v. Commissioner</u>, 94 T.C. 316, 334 (1990).

The list of the badges of fraud, however, is illustrative. We consider the totality of the facts and circumstances of each case to determine whether there is fraudulent intent. <u>King's Court Mobile Home Park, Inc. v. Commissioner</u>, 98 T.C. 511, 516 (1992); <u>Recklitis v. Commissioner</u>, <u>supra</u>.

Respondent contends that the following facts, taken as a whole, prove that petitioner had the intent to fraudulently evade paying income tax on at least some part of the underpayment for the years in issue:  (1) His failure to file income tax returns for the years 1986 through 1991; (2) through that failure to file, a corresponding consistent failure to report substantial amounts of income from the logging business; (3) the failure to maintain books and records of the amounts derived from the logging business; (4) his failure to pay estimated income taxes for the years in question; and (5) the cashing, rather than depositing, of checks derived from the logging business.

In the instant case, petitioner did not file income tax returns for the taxable years 1986 through 1991.  The parties have stipulated this fact.  It is also without dispute that petitioner did not report relatively large amounts of income and expenses in connection with his logging business.

An initial analysis reveals that some of the badges of fraud are present.  Petitioner earned substantial amounts of income that were not reported, did not keep adequate records, and failed to provide records to or meet with respondent's agent.  Due to the 1989 audit of his 1985 Federal income tax return and the seizure of his bank account, petitioner decided to close his bank account and, to some extent, deal in cash.  Petitioner, however,

did not misrepresent, secrete, or attempt to deceive. Although we do not approve of petitioner's reasons for failing to file returns and failing to submit to respondent's examination, those events, on this record, do not satisfy respondent's burden to clearly and convincingly prove fraud.

On this record, we do not find that petitioner's underpayment was due to an intent to evade taxes known to be due and owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States, supra at 1004; Rowlee v. Commissioner, supra at 1123; Acker v. Commissioner, supra at 112.

Respondent places great emphasis on the fact that petitioner had an accountant for the 1985 taxable year, contending that this reflects a history of filing timely tax returns, and thus petitioner knew of the filing requirements. Petitioner, however, did not set out to evade tax he thought to be due. Instead, he came to believe that he was not obligated to file a Federal tax return and that he had no obligation to pay Federal tax. On this record, we find that his belief was not an intentional attempt to fraudulently evade the payment of tax.

Respondent also argues that petitioner attempted to conceal assets by dealing in cash. Petitioner's resolve to close his bank account and, therefore, use cash was not coupled with his

belief that he was not obligated to pay tax. Petitioner, based on his belief, failed to file his 1986 and later years' returns. It was only after his bank account was seized in 1989 in connection with the audit of his 1985 tax return that petitioner closed his bank account. By 1989, petitioner had failed to file several Federal income tax returns. Petitioner believed that he had correctly reported his income and deductions for 1985 by using a professional return preparer (accountant). Petitioner, who is not well educated or versed in business and tax matters, represented himself in the 1985 audit. From his perspective he had properly filed his 1985 return, and the resulting seizure of his bank account caused him to react by closing the bank account. There is no indication that the 1989 audit of petitioner's 1985 return involved the so-called protester arguments or that he failed to cooperate with respondent's agent.

Petitioner did not cooperate with the revenue agent in the determination of his tax liability for 1986 through 1991. On occasion, this has been found to be an indicium of fraud. See Rowlee v. Commissioner, 80 T.C. at 1125; Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980); Gajewski v. Commissioner, 67 T.C. 181, 200 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Here, however, petitioner did not attempt to deceive or mislead the revenue agent. Instead, he

acknowledged that he did not file any Federal income tax returns

and provided his reasons for not meeting with the agent or filing

returns.  In this regard, tax protester arguments, even though

meritless and frivolous, without more, do not necessarily amount

to fraud.  Kotmair v. Commissioner, 86 T.C. 1253, 1262 (1986).[4]

Petitioner's failure to cooperate here was to his own detriment.

Respondent had received Forms 1099 from the company(ies) that had

paid petitioner for harvested timber in each year.  Petitioner,

by his failure to come forward, however, did not obtain the

benefit of the deductions to which he was entitled in connection

with the harvesting of timber.  His failure to cooperate did not

keep respondent from being able to determine his income or

receipts.

At trial, petitioner admitted that he knew Melton was not an

accountant or an attorney experienced in tax matters, but he

believed Melton's advice that he did not owe tax.  Petitioner is

not well versed in tax and financial matters and has only limited

formal education.  We cannot say that his holding to so-called

protester tenets was with intent to defraud or misrepresent.  In

---

[4] We stated in Kotmair v. Commissioner, 86 T.C. 1253, 1262 (1986) that the taxpayer's protester arguments "may have been meritless, frivolous, wrongheaded, and even stupid, but we cannot hold that they amounted to fraud, without something more.  Were we to do so, every failure-to-file protester case would be automatically converted into a fraud case."

general, a taxpayer's negligence, whether slight or gross, is not enough to prove fraud. Kellett v. Commissioner, 5 T.C. 608, 616 (1945).

Respondent maintains that petitioner's failure to file timely income tax returns was part of a pattern of fraud. Although a taxpayer's failure to file is prima facie evidence of negligence for purposes of section 6653(a), see Emmons v. Commissioner, 92 T.C. 342, 350 (1989), affd. 898 F.2d 50 (5th Cir. 1990), it is insufficient in and of itself to prove fraud. Rowlee v. Commissioner, supra at 1123.

The record here simply does not show any affirmative acts of concealment or misrepresentation so as to constitute fraud, such as filing false information or attempting to mislead respondent. Zell v. Commissioner, 763 F.2d 1139, 1146 (10th Cir. 1985), affg. T.C. Memo. 1984-152. For respondent to sustain her position as to the fraud addition to tax, it is not enough that respondent can show the taxpayer to be devious. See Kreps v. Commissioner, 351 F.2d 1, 7 (2d Cir. 1965), affg. 42 T.C. 660 (1964); Shaw v. Commissioner, 27 T.C. 561, 569-570 (1956), affd. 252 F.2d 681 (6th Cir. 1958); Gano v. Commissioner, 19 B.T.A. 518, 532-533 (1930). The evidence must be clear and convincing. In the instant case, we find that the evidence falls short of being

clear and convincing. Accordingly, we find that petitioner is not liable for additions to tax or penalties based on fraud.

In the alternative, respondent determined that petitioner is liable for the additions to tax for failure to timely file for all the years in issue. Section 6651(a)(1) imposes an addition to tax for a taxpayer's failure to file timely returns required to be filed (including income tax returns), unless the taxpayer can establish that such failure "is due to reasonable cause and not due to willful neglect". The addition to tax is 5 percent of the amount required to be shown on the return for each month beyond the return's due date, not exceeding 25 percent. Sec. 6651(a)(1). Petitioner bears the burden of showing respondent's determination to be in error and that there was reasonable cause for his failure to timely file. Rule 142(a).

Respondent, in the alternative, also determined a 5-percent addition to tax for each of the years 1986 through 1988 for negligence or intentional disregard of rules or regulations. Section 6653(a)(1)(A) for 1986 and 1987 and section 6653(a)(1) for 1988 provide for a 5-percent addition to tax if any part of the underpayment is due to negligence or intentional disregard of rules and regulations. If section 6653(a)(1)(A) applies for 1986 and 1987, then section 6653(a)(1)(B) provides for a further addition to tax equal to 50 percent of the interest attributable

to that portion of the underpayment resulting from negligence or intentional disregard of rules and regulations.  Negligence is defined as a lack of due care or failure to do what a reasonable and prudent person would do under the circumstances.  <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985).  Petitioner bears the burden of showing that he was not negligent.  Rule 142(a); <u>Bixby v. Commissioner</u>, 58 T.C. 757, 791-792 (1972).

Petitioner did not contend, either at trial or on brief, that his failure to file returns was due to reasonable cause or that his actions were reasonable.  On this record, we find that petitioner is liable for additions to tax for failure to file and negligence for the years indicated above.  In addition, we find that petitioner is liable for additions to tax under section 6654 as determined by respondent.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.