T.C. Memo. 1999-70

UNITED STATES TAX COURT

JANET N. DRUMMOND, A.K.A. JANET N. DE SANTI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

DARYL DRUMMOND, Petitioner <u>v</u>. COMMISSIONER OF
INTERNAL REVENUE, Respondent

Docket Nos. 26060-96, 26077-96.          Filed March 9, 1999.

Janet N. Drummond and Daryl Drummond, pro sese.

<u>Christine V. Olsen</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined the following defi-
ciencies in, and additions to, the Federal income tax (tax) of
petitioner Janet N. Drummond, a.k.a. Janet N. De Santi (Ms.
Drummond):

| | | Additions to Tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(b)(1)[1] | Sec. 6653(b)(2) | Sec. 6654 |
| 1983 | $19,113 | $9,607 | * | -- |
| 1984 | 9,025 | 4,513 | * | $509 |

* 50 percent of the interest due on the portion of the underpayment attributable to fraud. Respondent determined that the entire underpayment for each of the years 1983 and 1984 was due to fraud.

Respondent determined the following deficiencies in, and additions to, the tax of petitioner Daryl Drummond (Mr. Drummond):

| | | Additions to Tax | |
|---|---|---|---|
| Year | Deficiency | Sec. 6653(b)(1) | Sec. 6653(b)(2) |
| 1983 | $34,726 | $17,363 | * |
| 1984 | 21,038 | 10,519 | * |

* 50 percent of the interest due on the portion of the underpayment attributable to fraud. Respondent determined that the entire underpayment for each of the years 1983 and 1984 was due to fraud.

The issues for decision are:

(1) Should the determinations in the notice of deficiency (notice) issued to Ms. Drummond be sustained? We hold that they should.

(2) Should the determinations in the notice issued to Mr. Drummond be sustained? We hold that they should except to the extent that respondent's concession on brief that Mr. Drummond's

---

[1] All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

income for 1983 is community property affects those determinations for that year.[2]

FINDINGS OF FACT

Many of the facts are deemed admitted pursuant to Rule 90(c).[3]

Each petitioner resided in California at the time the respective petitions in these cases were filed.

For a number of years prior to and during the years at issue, Ms. Drummond, a college graduate and a certified management accountant, was employed by American Business College (ABC), a vocational college located in San Diego, California, that was owned and operated by E.D.U.C., Inc. (E.D.U.C.). Colonel Haller was the stockholder and chief executive officer of E.D.U.C.

For a number of years prior to 1983, Ms. Drummond worked as a supervisor in the business office and the bookkeeping department of ABC. During the years at issue, Ms. Drummond was the bookkeeper and the comptroller of ABC and vice president of E.D.U.C. During those years, Colonel Haller did not visit the business office of ABC on a daily basis. Instead, he relied on

---

[2] Respondent's concession for 1983 and our holdings in Mr. Drummond's case at docket No. 26077-96 will require a computation in that case under Rule 155.

[3] Unless otherwise indicated, our Findings of Fact and Opinion pertain to the years at issue.

Ms. Drummond to operate that office and the bookkeeping department.

In her supervisory roles at ABC and E.D.U.C., Ms. Drummond was in charge of all financial aspects of ABC, including cash flow, preparation of financial statements, general ledger work, preparation of tax returns, and similar functions, and instructed other employees of the business office and the bookkeeping department of ABC in their duties. Ms. Drummond, inter alia, wrote checks or caused checks to be written for ABC. She also signed checks or caused checks to be signed for ABC.

Throughout the years at issue, Ms. Drummond generally received $1,500 semimonthly from ABC. During approximately the first six months of 1983, Ms. Drummond wrote checks to herself from ABC totaling $18,000, which were classified as wages and on which taxes were withheld. Around July 1983, Ms. Drummond removed herself from ABC's payroll, but she continued to receive from ABC at least $1,500 semimonthly.

In addition to the $18,000 in checks from ABC that Ms. Drummond wrote to herself during the first half of 1983, which were classified as wages, during 1983 and 1984, Ms. Drummond wrote checks to herself and received funds from ABC in the respective amounts of $52,277.08 and $39,553.22, which were not classified as wages. Ms. Drummond deposited those checks into her personal checking accounts and was aware of the amount of

payments that she received from ABC during each of the years 1983 and 1984. Ms. Drummond directed employees of ABC not to issue a Form 1099 to her for either 1983 or 1984.

Ms. Drummond received $4,669 in interest income during 1984. She also received during that year $33 in capital gain income through SFR Three, Ltd.

At all relevant times, Ms. Drummond was fully aware of the requirement to report income. She also was fully aware of the requirement to file a tax return (return).

Ms. Drummond, who married Mr. Drummond on December 31, 1984, filed a return for 1983 around August 19, 1985, in which she reported $18,000 in wages, but did not report the additional funds totaling $52,277.08 that she received from ABC during that year. Ms. Drummond did not file a return for 1984, and consequently she did not report any of the funds totaling $39,553.22 that she received from ABC during that year. Nor did she report the $4,669 in interest income and $33 in capital gain income that she received during 1984. Except for a credit in the amount of $506 that Ms. Drummond requested in her 1983 return be applied to her 1984 estimated tax, Ms. Drummond made no estimated tax payments with respect to her taxable year 1984.

During respondent's civil examination of Ms. Drummond's taxable years 1983 and 1984, Ms. Drummond presented respondent's

agent with a Form 1040X, Amended U.S. Individual Income Tax Return, for 1983, which was not accurate.

Ms. Drummond was indicted for and convicted (1) under section 7206(1) of willfully subscribing to and filing a false return for 1983 and (2) under section 7203 for failing to file a return for 1984.

Mr. Drummond, a graduate of the University of Missouri, married Betty Drummond in 1958 and remained married to her through 1983. In 1960, Mr. Drummond became licensed as a certified public accountant. He worked for Haskins and Sells, a major accounting firm, from 1960 through 1970. Mr. Drummond operated his own accounting business for approximately ten years prior to 1983 and continued to operate that business during the years at issue.

Mr. Drummond prepared tax returns for various clients for the taxable years 1982, 1983, and 1984. During those years, Mr. Drummond also had a contract to perform audit and accounting services for E.D.U.C. doing business as ABC, and Mr. Drummond audited ABC's books.

During each of the years 1983 and 1984, Mr. Drummond received a monthly retainer of $3,500, or a total of $42,000, for performing accounting services for ABC. During those years, he also received checks from ABC that were made payable to him for additional amounts totaling $57,547 and $77,874, respectively,

for performing audits and other work. Mr. Drummond deposited those checks into his personal bank and investment accounts or used some of those checks to purchase cashier's checks. Ms. Drummond directed employees of ABC not to issue a Form 1099 to Mr. Drummond for either 1983 or 1984. However, Mr. Drummond knew that the amounts which he received during the years at issue were classified as "special payroll" on ABC's books.

Mr. Drummond received gross receipts from his accounting business for 1983 and 1984 in the amounts of $127,567 and $119,874, respectively. Of those total amounts, Mr. Drummond was aware that he received $99,547 and $119,874 from ABC during 1983 and 1984, respectively.

During 1983, Mr. Drummond did not incur or pay any sales costs in his accounting business. Nor did he incur or pay during that year any interest expenses in that business. During 1984, Mr. Drummond did not incur any legal expenses in his accounting business.

During their marriage, Mr. Drummond and Betty Drummond did not enter into a separate property agreement. Consequently, the income that Mr. Drummond received during 1983 from his accounting business was community property, one-half of which is includible in Mr. Drummond's income for 1983.

Betty Drummond received wage income of $27,115.37 during 1983, which was community property, one-half of which is includible in Mr. Drummond's income for 1983.

During 1984, Mr. Drummond and Ms. Drummond had a joint Merrill Lynch account from which they received interest income during that year in the amount of $2,899, one-half of which is interest income to each of them for that year. During that year, Mr. Drummond also received interest income in the amount of $241 from the Bank of San Diego.

Betty Drummond filed for divorce from Mr. Drummond in 1984. On October 5, 1984, a bifurcated judgment of dissolution of the marriage of Mr. Drummond and Betty Drummond was issued. On July 16, 1985, a final judgment of dissolution of that marriage was entered. Pursuant to the property settlement agreement incident to that divorce, Betty Drummond was awarded $21,890 of precious metals.

Mr. Drummond, who has knowledge of tax matters and was capable of correctly preparing and filing his own returns for 1983 and 1984, prepared his returns for those years and filed them around September 19 and October 17, 1985, respectively. Mr. Drummond reported gross receipts in Schedule C of his 1983 return in the amount of $70,020. Those gross receipts consisted of $42,000 that Mr. Drummond received from ABC and $28,020 that he received from other clients during 1983. Mr. Drummond did not

report in his 1983 return the additional $57,547 that he received from ABC during that year. Mr. Drummond did not report in his 1983 return one-half of the community property wage income totaling $27,115.37 that Betty Drummond, his spouse during 1983, received during that year. Mr. Drummond reported cost of sales in the amount of $21,890 in Schedule C of his 1983 return even though he did not incur or pay any sales costs during 1983. The amount of cost of sales claimed by Mr. Drummond in Schedule C of his 1983 return is equal to the amount of precious metals that Betty Drummond was awarded pursuant to the property settlement agreement incident to her divorce from Mr. Drummond. Mr. Drummond also deducted interest expenses in the amount of $6,669 in Schedule C of his 1983 return, even though he did not incur or pay any interest expenses in his accounting business.

Mr. Drummond reported no income in his 1984 return. He thus excluded from that return $119,874 that he had received during 1984 from ABC. Mr. Drummond also did not report in his 1984 return 50 percent of the interest income earned on the joint Merrill Lynch account that he and Ms. Drummond had during 1984. Nor did Mr. Drummond report in his return for 1984 the interest income totaling $241 that he had received during that year from the Bank of San Diego.

During respondent's investigation of Mr. Drummond's taxable years 1983 and 1984, Mr. Drummond made numerous false, mislead-

ing, inconsistent, and implausible statements to respondent's agents about why he failed to report certain income in his 1983 return and why he reported no income in his 1984 return. One explanation that Mr. Drummond gave to respondent's agent for his unreported income for the years at issue related to Harbour Marine Services in which Mr. Drummond had invested $25,000 during 1982. Mr. Drummond told respondent's agent that Harbour Marine Services was a sole proprietorship, which might have losses for 1983 and 1984 that would offset any income that he had for those years. At various times, Mr. Drummond told respondent's agent that Harbour Marine Services had losses for 1983 in the amounts of $47,000, $70,000, and $400,000. Although Mr. Drummond informed respondent's agent that Harbour Marine Services was a sole proprietorship, he knew that it was a corporation because, inter alia, (1) Harbour Marine Services had filed articles of incorporation with the California Secretary of State in 1982; (2) Mr. Drummond had offered stock in Harbour Marine Services to an individual; (3) Mr. Drummond opened a corporate bank account for Harbour Marine Services and listed himself as its president; and (4) Harbour Marine Services' books were maintained as a corporation. Moreover, on April 24, 1995, over two years after Mr. Drummond was convicted under section 7206(1) of filing false returns for 1983 and 1984, he presented respondent's agent with a copy of Form 1120, U.S. Corporation Income Tax Return, dated

April 24, 1995, for Harbour Marine Services' taxable year 1982. Mr. Drummond's stock in Harbour Marine Services became worthless during 1984.

Other statements that Mr. Drummond made to respondent's agents to explain his tax situation for 1984 included his false claim that he did not work during that year. Mr. Drummond also told respondent's agent that his 1984 return was not accurate because he had been in the midst of a messy divorce when it was filed. In fact, Mr. Drummond's divorce was finalized, and he had remarried, long before his 1984 return was filed. In addition, at sometime during respondent's examination of Mr. Drummond's taxable years 1983 and 1984, Mr. Drummond told respondent's agent that he did not report income from ABC because he was on the completed contract method.

Another illustration of misleading statements made by Mr. Drummond to respondent's agents is his claim relating to D.D. & Associates. About a year and a half after the investigation by respondent of Mr. Drummond's taxable years 1983 and 1984 had begun, Mr. Drummond informed respondent's agent that the income that he received from ABC was partnership income from his part- nership known as D.D. & Associates. Prior to making that state- ment to respondent's agent, Mr. Drummond had taken the position that D.D. & Associates was the name of his accounting business. Mr. Drummond also told respondent's agent that no return had been

filed for D.D. & Associates.  On March 21, 1991, before the criminal trial of Mr. Drummond and Ms. Drummond, a copy of Form 1065, U.S. Partnership Return of Income, for D.D. & Associates with respect to the taxable year ended June 30, 1984, was presented to the assistant U.S. attorney and respondent's agent as having been filed on September 4, 1984.  In fact, D.D. & Associates did not file Form 1065 for that taxable year or for the taxable year ended June 30, 1985.  On April 24, 1995, another copy of a Form 1065 for D.D. & Associates with respect to the taxable year ended December 31, 1983, was presented to respondent's agent.  In fact, D.D. & Associates did not file Forms 1065 for the taxable years ended December 31, 1983, and December 31, 1984.

On April 24, 1995, during respondent's civil examination of Mr. Drummond's taxable years 1983 and 1984, Mr. Drummond presented another inaccurate tax return for 1983 to respondent's agent.  Mr. Drummond has never filed amended returns for 1983 and 1984.

In early 1985, ABC sued Mr. Drummond and Ms. Drummond for fraud and conversion.  However, the suit was not pursued because Colonel Haller died.

Mr. Drummond was indicted for and convicted under section 7206(1) of willfully subscribing to and filing false returns for 1983 and 1984.

On September 4, 1996, respondent sent a separate notice to Ms. Drummond and to Mr. Drummond. Respondent determined, inter alia, in the notice issued to Ms. Drummond that she received nonemployee compensation from ABC during 1983 and 1984 which she did not report for those years, that Ms. Drummond is liable for 1984 for the addition to tax for failure to make estimated tax payments, and that she is liable for each of the years 1983 and 1984 for the additions to tax for fraud under section 6653(b)(1) and (2) on the underpayment of tax for each such year. Respondent determined, inter alia, in the notice issued to Mr. Drummond that he received nonemployee compensation from ABC during 1983 and 1984 which he did not include in Schedule C of his return for each of those years and that Mr. Drummond is liable for each of the years 1983 and 1984 for the additions to tax for fraud under section 6653(b)(1) and (2) on the underpayment of tax for each such year.

                              OPINION

Each petitioner bears the burden of proving that all the determinations in the respective notices, except the additions to tax for fraud, are in error. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Neither petitioner appeared at the trial of these cases.[4] On the record before us, we find

---

[4] The Court nonetheless afforded each petitioner the opportunity to file a brief, either separately or jointly. They
                                        (continued...)

that neither Mr. Drummond nor Ms. Drummond has established that the determinations on which each has the burden of proof are erroneous.  Accordingly, we sustain those determinations except to the extent that respondent's concession that Mr. Drummond's income for 1983 is community property affects the determinations for 1983 with respect to Mr. Drummond on which he has the burden of proof.

We now turn to the fraud issue.  In order for the additions to tax for fraud under section 6653(b)(1) and (2) to apply, respondent must prove by clear and convincing evidence that an underpayment exists and that some portion of such underpayment is due to fraud.  See sec. 7454(a); Rule 142(b); Niedringhaus v. Commissioner, 99 T.C. 202, 210 (1992).  On the record before us, we find that respondent has established by clear and convincing evidence that each petitioner has an underpayment for each of the years at issue.

To prove that an underpayment is attributable to the fraudulent intent of a taxpayer, respondent must prove by clear and convincing evidence that the taxpayer intended to evade taxes that he or she believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such

---

[4](...continued)
decided to file a joint brief.  That brief contains numerous statements and attachments which are not evidence in these cases and which we consequently disregarded.  See Rule 143(b).

taxes. See <u>Stoltzfus v. United States</u>, 398 F.2d 1002, 1004 (3d Cir. 1968); <u>Parks v. Commissioner</u>, 94 T.C. 654, 661 (1990); see also <u>Laurins v. Commissioner</u>, 889 F.2d 910, 913 (9th Cir. 1989), affg. <u>Norman v. Commissioner</u>, T.C. Memo. 1987-265. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. See <u>DiLeo v. Commissioner</u>, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992); <u>Recklitis v. Commissioner</u>, 91 T.C. 874, 909 (1988); <u>Gajewski v. Commissioner</u>, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed or imputed and should not be found in circumstances which create at most only suspicion. See <u>Toussaint v. Commissioner</u>, 743 F.2d 309, 312 (5th Cir. 1984), affg. T.C. Memo. 1984-25; <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 700 (1989); <u>Katz v. Commissioner</u>, 90 T.C. 1130, 1144 (1988). Direct evidence of the requisite fraudulent intent is seldom available. See <u>Petzoldt v. Commissioner</u>, <u>supra</u> at 699; <u>Rowlee v. Commissioner</u>, 80 T.C. 1111, 1123 (1983). Consequently, respondent may prove fraud by circumstantial evidence. See <u>Toussaint v. Commissioner</u>, <u>supra</u> at 312; <u>Marsellus v. Commissioner</u>, 544 F.2d 883, 885 (5th Cir. 1977), affg. T.C. Memo. 1975-368; <u>Rowlee v. Commissioner</u>, <u>supra</u> at 1123.

The courts have identified a number of badges of fraud from which fraudulent intent may be inferred. Those badges include (1) understatement of income; (2) acts designed to conceal

income; (3) false, misleading, inconsistent, or implausible explanations of behavior; (4) failure to cooperate with respondent's agents; (5) failure to file a tax return; (6) willfully subscribing to and filing a false tax return under section 7206(1); (7) failure to make estimated tax payments; and (8) failure by the taxpayer to appear at trial, thereby indicating a deliberate effort to conceal the facts concerning such taxpayer's tax liability. See Laurins v. Commissioner, supra at 913; Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Ruark v. Commissioner, 449 F.2d 311, 312-313 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-48; Bagby v. Commissioner, 102 T.C. 596, 608 (1994); Niedringhaus v. Commissioner, supra at 211; DiLeo v. Commissioner, supra at 876; Miller v. Commissioner, 94 T.C. 316, 334 (1990); Petzoldt v. Commissioner, supra at 700; Recklitis v. Commissioner, supra at 910; Smith v. Commissioner, 91 T.C. 1049, 1059-1060 (1988), affd. 926 F.2d 1470 (6th Cir. 1991); Stringer v. Commissioner, 84 T.C. 693, 715 (1985), affd. without published opinion 789 F.2d 917 (4th Cir. 1986); Castillo v. Commissioner, 84 T.C. 405, 409 (1985). In addition, the taxpayer's background, including the sophistication, experience, and education of the taxpayer, and the context of the events in question may be considered circumstantial evidence of fraud. See Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274;

Niedringhaus v. Commissioner, supra at 211.  Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia constitutes persuasive circumstantial evidence of fraud.  See Bradford v. Commissioner, supra at 307; Petzoldt v. Commissioner, supra at 700.

The record in this case is replete with indicia of fraud on the part of Ms. Drummond and on the part of Mr. Drummond, including the following.  Ms. Drummond, a college graduate and a certified management accountant, was fully aware of the requirement to report income and to file tax returns for the years at issue.  She nonetheless did not report a substantial amount of income in her 1983 return and did not report any income for 1984 because she did not file a return for that year.  Ms. Drummond was the bookkeeper and the comptroller of ABC and vice president of E.D.U.C.  In those supervisory roles, Ms. Drummond wrote certain checks or caused certain checks to be written for ABC to herself and to Mr. Drummond, the amounts of which they did not report as income for the years at issue.  She also caused herself to be removed from ABC's payroll and directed ABC's employees not to issue a Form 1099 to her or to Mr. Drummond.  Ms. Drummond thereby took acts designed to conceal the income that was paid to her and to Mr. Drummond.  Ms. Drummond willfully subscribed to and filed a false tax return for 1983 and failed to file a tax return for 1984, for which she was convicted under sections

7206(1) and 7203, respectively. Ms. Drummond failed to make required estimated tax payments for 1984. She also failed to appear at trial, which we believe was a deliberate effort by her to conceal the facts concerning her tax liability for the years at issue.

Mr. Drummond, a college graduate and a certified public accountant, has knowledge of tax matters and was capable of correctly preparing and filing his tax returns for 1983 and 1984. He nonetheless substantially understated his income in each of those returns. Mr. Drummond gave false, misleading, inconsistent, and implausible explanations of his behavior to respondent's agents during their examination of his taxable years 1983 and 1984 and thereby did not cooperate with those agents. Mr. Drummond willfully subscribed to and filed a false tax return for each of the years at issue, for which he was convicted under section 7206(1). He also failed to appear at trial, which we believe was a deliberate effort by him to conceal the facts concerning his tax liability for the years at issue.

Based on our examination of the entire record in these cases, we find that respondent has established by clear and convincing evidence that each petitioner intended to evade taxes for each of the years 1983 and 1984, which each petitioner believed to be owing, by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. We further find

on that record that each petitioner is liable for each of the years 1983 and 1984 for the additions to tax for fraud under section 6653(b)(1) and (2) on the underpayment of tax that each petitioner has for each of those years.

To reflect the foregoing and the concession of respondent with respect to Mr. Drummond for 1983,

<u>Decision will be entered for respondent in docket No. 26060-96</u>.

<u>Decision will be entered under Rule 155 in docket No. 26077-96</u>.