Aleksandrs V. LAURINS; Cathie
Laurins, Petitioners–Appellants,

v.

COMMISSIONER INTERNAL
REVENUE SERVICE,
Respondent–Appellee.

Nos. 88–7181, 88–7182.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 12, 1989.

Decided Nov. 17, 1989.

Laurence Merryman, Irvine, Cal., for petitioners-appellants.

James I. Knapp, Acting Asst. Atty. Gen., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before CHAMBERS, CANBY and NORRIS, Circuit Judges.

CANBY, Circuit Judge:

Aleksandrs and Cathie Laurins, taxpayers[1], appeal the decision of the tax court finding a total liability of $866,842.62 for tax years 1973–75. The liability resulted from the Tax Court's decision that Laurins had received taxable distributions of certain shares during the years in issue, and

1. The taxable actions involved here are those of Aleksandrs Laurins, who will be referred to    hereafter simply as Laurins.

that he had fraudulently understated his income. On appeal, Laurins contends that:

(1) The Commissioner was barred by the statute of limitations from amending his answer to assert that Aleksandrs had additional taxable income;

(2) The tax court erred in finding that a check to the Commissioner, subsequently cashed, did not accomplish an accord and satisfaction of tax liability for the years in issue;

(3) The tax court erred in finding that the fair market value of shares received by Aleksandrs from the Co-op was $1,000 per share; and

(4) The tax court erred in finding that the underpayment of taxes owed by Laurins was due to fraud. ·

We reject all of these contentions and affirm the decision of the Tax Court.

## BACKGROUND AND PROCEEDINGS BELOW

Aleksandrs V. Laurins is an attorney and a former employee of the Internal Revenue Service. He served as a trial attorney in the National Office Trial Branch of the Tax Court Division for three years. He has held himself out to the public as a tax expert, and has written books and held seminars on tax shelters.

Laurins and the many corporations and partnerships that he set up and controlled were involved in several real estate development projects where apartments were converted and sold individually as co-ops. For example, Laurins formed a non-stock homeowners' cooperative corporation to acquire the Fairfax West Apartments. The owners' cooperative assigned its ownership interest to A.V. Laurins & Co., Inc., another corporation formed by Laurins. The homeowners' cooperative also executed a promissory note of $1,127,520 to A.V. Laurins & Co., Inc., secured by deeds of trust of $591,748 and $60,000. The plan was for apartment purchasers to execute notes equal to their pro rata share of the $1,127,-520 note, and for payments received by the homeowners' cooperative to fund that cooperative's payments to A.V. Laurins Co., Inc., on the $1,127,520 note.

A.V. Laurins & Co., Inc. in 1973 assigned the $1,127,520 note to Co-op Mortgage Investments Assiociates ("Co-op"), a limited partnership of which A.V. Laurins Co., Inc. was then the general partner. In return, Co-op transferred 396 class A partnership units of Co-op, not to A.V. Laurins Co., Inc., but to Laurins himself. It is the effect of this distribution to Laurins, and of others comparable to it, that is the primary subject of this appeal.

The tax court held that the shares of Co-op Mortgage Investment Associates (Co-op) received by Laurins were taxable income, valued at $1,000 each. The court also held that a loss of $46,013.56 from Sundown could not be claimed by Laurins, who was never a partner. Similarly, losses from Pleasant Hill could not be deducted, because Laurins never made any capital contribution to the partnership.[2] The Tax Court also found that the underpayment of taxes was due to fraud, so additional amounts were added to the deficiencies under 26 U.S.C. § 6653(b). Finally, the Tax Court found that there had been no accord and satisfaction between the Commissioner and Laurins.

## DISCUSSION

### A. *Statute of Limitations*

■ The Commissioner sent a notice of deficiency to the Laurins on June 3, 1977. The Laurins filed a petition on August 25, 1977. The Commissioner responded to the petition in his answer of October 25, 1977. After discovery, the Commissioner filed a motion to amend his answer, and asserted that the Laurins had realized additional income during 1973 that was not noted on the original notice of deficiency. The court allowed the amendment. The Laurins contend that the Commissioner could not amend the answer in May of 1983 because the statute of limitations had run.

---

**2.** The Laurins do not appeal the findings that these losses were not deductible, but those findings are relevant to the fraud determination.

Section 6501(a) of the Code provides that a tax must be assessed within three years from the date the return is filed. The Laurins contend that because the amended answer was filed after the three-year period expired, it could not assess the tax. Section 6503(a), however, suspends the running of the limitations period, upon the mailing of a deficiency notice, until 60 days after the decision of any tax court proceeding, instituted by the taxpayer, becomes final. In addition, § 6501(c) provides that a tax may be assessed at any time in the case of a false or fraudulent return. The amendment to the answer was not barred by limitations.

### B. *Accord and Satisfaction*

■ Laurins filed a motion to dismiss the petition at the beginning of trial, contending that any liability had been discharged in an accord and satisfaction. On March 15, 1984, Laurins sent a check to the IRS for $2376.70 for the 1977 tax year, and on the back of the check he wrote that it was in "full accord and satisfaction of 1977 and all prior years." The check was cashed. The Tax Court denied the motion to dismiss.

Laurins now argues that the proposed accord and satisfaction was effective under section 7122(a) to settle this matter. Under 26 U.S.C. § 7122(a), the "Secretary may compromise any civil or criminal case arising under the internal revenue laws ..." There are, however, formal procedures for settling tax claims, and Laurins' method is not among them.

The regulations and procedures for compromises under 26 U.S.C. § 7122 are the exclusive method of settling claims. *Schumaker v. Commissioner*, 648 F.2d 1198, 1199–1200 (9th Cir.1981). First, an offer of compromise must be submitted on special forms prescribed by the Secretary, and an offer will not be considered to have been accepted until and unless the taxpayer is notified in writing of the acceptance. 26 C.F.R. § 301.7122–1(d)(1), (d)(3). Laurins did not submit his offer of compromise on the appropriate form, and the record does not indicate, nor does he argue, that he

received notice that his offer was accepted. No one with authority to settle claims handled his check. Laurins did not follow the correct procedures to settle the claim. Indeed, the record fully supports the observation of the Tax Court that Laurins was attempting to trick the government into a settlement. The Tax Court properly denied the motion to dismiss.

### C. *Fair Market Value*

■ The tax court held that the shares of Co-op received by Laurins were taxable income, and found that the fair market value of the shares was $1,000 per share. Laurins contends that the shares were just paper, without any fair market value at all. We review the determination of fair market value under the clearly erroneous standard. *Waddell v. Commissioner*, 841 F.2d 264, 268 (9th Cir.1988).

Laurins testified that the shares had no fair market value, because there was no market for them. He stated that the shares had a value of $1,000 each on the books, but the value of the shares depended on all purchasers of the shares in the co-op making their payments. In addition, Laurins testified that the shares were subordinated to the interests of the holders of class B shares.

There is, however, substantial evidence in the record supporting a fair market value of $1,000 per share. It includes: 1) Laurins had stipulated that the parties to the transactions had valued the shares at $1,000 each, and in another stipulation regarding the 200 Co-op shares constructively distributed to him in 1974, he stipulated that "the value of these shares was $1,000 per share"; 2) Laurins transferred 120 shares to his wife's grandmother to discharge a pre-existing debt of $120,000; 3) on his 1973 tax return, Laurins claimed an amount realized of $1,000 per unit in computing the gain he realized from their disposition; 4) Co-op treated the shares as having a fair market value of $1,000 per unit when it included $396,000 in its basis in the Fairfax West $1,127,520 note; 5) the partnership agreement provided for the capitalization of Co-op on the basis that all

limited partners would contribute $1,000 for each share acquired.

Sufficient evidence supports the Tax Court's finding of a fair market value of $1,000 each for the co-op shares.

### D. *Fraud under 26 U.S.C. § 6653(b)*

We review a finding of fraud under the clearly erroneous standard. *Edelson v. Commissioner,* 829 F.2d 828, 832 (9th Cir. 1987). If "any part of any underpayment" of tax is due to fraud, the taxpayer is liable for an addition to tax in the amount of 50% of the full amount of the underpayment. 26 U.S.C. § 6653(b) (1982).[3] Fraud, under § 6653(b), requires intentional wrongdoing. *Conforte v. Commissioner,* 692 F.2d 587, 592 (9th Cir.1982). To establish liability, the Commissioner had to show knowing falsehood, intent to evade tax, and underpayment of tax. *Considine v. United States,* 683 F.2d 1285, 1288 (9th Cir.1982).

The Commissioner had the burden of proving fraud by clear and convincing evidence. 26 U.S.C. § 7454(a); *see Toussaint v. Commissioner,* 743 F.2d 309, 312 (5th Cir.1984). Fraud can be proved by circumstantial evidence. *Edelson,* 829 F.2d at 832. "Badges of fraud" include: 1) understatement of income; 2) inadequate records; 3) failure to file tax returns; 4) implausible or inconsistent explanations of behavior; 5) concealment of assets; 6) failure to cooperate with tax authorities; and 7) lack of credibility of the taxpayer's testimony. *Id.; Toussaint,* 743 F.2d at 312. In addition, the fact that Laurins is sophisticated in tax matters permits an inference of intent to defraud when he willfully underpays his taxes. *Considine,* 683 F.2d at 1288. The consistent and substantial understatement of income is itself evidence of fraud. *Lollis v. Commissioner,* 595 F.2d 1189, 1191 (9th Cir.1979).

Laurins argues that there was no fraud because all matters had been disclosed to the IRS; he was not concealing anything. All income would have been and was ultimately reported to the IRS. He argues

there was just a difference of opinion about how and when to report the income.

The Commissioner contends that there was a pattern of consistent and substantial underreporting of income (three years involving large sums of money); that Laurins knew he should have reported the receipt of Co-op shares as income, but simply chose not to; and that he deducted losses from Sundown, when he was not a partner in the partnership, and losses from Pleasant Hill, when he had contributed no capital to the partnership. The tax court found that Laurins submitted fictitious tax returns into evidence to conceal the fraud. The court also considered Laurins' knowledge of tax law, and the lack of credibility in his testimony. The Tax Court noted that the admission of the fictitious documents at trial demonstrated that Laurins was fully capable of fraud.

In light of the entire record, the Tax Court's finding of fraud was not clearly erroneous.

AFFIRMED.

---

**3.** The computation of the addition to tax for fraud was changed in 1986 to 75% of the portion of the underpayment attributable to fraud. 26 U.S.C. § 6653(b) (Supp. IV 1986), *see* Pub.L.

No. 99–514, § 1503(b). Further changes were made in 1988. *See* 26 U.S.C.A. § 6653(b) (West 1989). These revisions do not affect the computation of additions to tax for fraud in this case.