T.C. Summary Opinion 2005-12


UNITED STATES TAX COURT


DAVID JACKSON AND BETTY S. JACKSON, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 525-04S.                    Filed February 14, 2005.


David and Betty S. Jackson, pro sese.

Vicken Abajian, for respondent.


ARMEN, Special Trial Judge:  This case was heard pursuant to the provisions of sections 6330(d) and 7463(f)(2) of the Internal Revenue Code in effect at the time that the petition was filed.[1] The decision to be entered is not reviewable by any other court,

_____

    [1] Unless otherwise indicated, subsequent references to sections other than secs. 6320 and 6330 are to the Internal Revenue Code of 1986 in effect for 1995, 1996, 1998, 1999, 2000, and 2001, the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

and this opinion should not be cited as authority.

The petition in this case was filed in response to a Notice of Determination Concerning Collection Action Under Section 6320[2] for the taxable years 1995, 1996, 1998, 1999, 2000, and 2001 (years in issue). The issues for decision are:

(1) Whether respondent abused his discretion in failing to abate interest for the years in issue that had accrued from March 27 through November 30, 2003. We hold that he did to the extent provided herein.

(2) Whether respondent improperly refused to abate assessment for the addition to tax for failure to timely pay under section 6651(a)(2) for the years in issue. We hold that he did not.

(3) Whether respondent abused his discretion in denying petitioners' claim for damages for respondent's unnecessary filing of a lien. We hold that the Court lacks jurisdiction to consider this claim.

Background

Some of the facts have been stipulated, and they are so found. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference.

---

[2] Sec. 6320 is effective with respect to collection actions initiated more than 180 days after July 22, 1998 (i.e., Jan. 19, 1999). See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3401(d), 112 Stat. 750.

Petitioners resided in Rancho Santa Margarita, California, at the time that the petition was filed with the Court.

A.  Petitioners' Income Tax Returns

Petitioners filed Federal income tax returns for each year in issue reporting tax due as follows:

| Tax Year | Date Filed | Extension of Time to File | Tax Due |
|---|---|---|---|
| 1995 | 04/15/1996 | -0- | $4,528 |
| 1996 | 09/22/1997 | 08/15/1997 | 2,327 |
| 1998 | 12/29/1999 | 08/15/1999 | 10,965 |
| 1999 | 10/15/2000 | 08/15/2000 | 2,431 |
| 2000 | 10/12/2001 | 10/15/2001 | 26,144 |
| 2001 | 04/15/2002 | -0- | 1,826 |

At the time that they filed each return, petitioners did not pay the tax shown as due on the return.

Based on the returns filed by petitioners, respondent assessed the tax shown as due on each return, statutory interest for the years in issue, an addition to tax for failure to timely file a return under section 6651(a)(1) for 1996, 1998, and 1999, an addition to tax for failure to timely pay tax under section 6651(a)(2) for the years in issue, and an addition to tax for failure to pay estimated tax under section 6654 for the years in issue.

On May 27, 1999, petitioners entered into an installment agreement for 1995 and 1996, but defaulted on April 29 and March 25, 2002, respectively. On January 20, 2002, petitioners entered into an installment agreement for 1998, 1999, and 2000, but defaulted on April 29, 2002.

On April 25, 2002, respondent's Ogden Service Center received from petitioners a Form 656, Offer in Compromise (OIC), offering $10,000 to satisfy their income tax liabilities for the years in issue. Petitioners attached to the OIC a statement stating, in part: "We are not able to pay the entire amount owed, but we are refinancing our current assets, borrowing from friends and family and will use our income to pay the amount we are offering."

Although the record does not definitively disclose what events have transpired since April 2002, it appears that on or about March 27, 2003, petitioners requested from respondent a payoff amount. In response, petitioners received from respondent computer printouts dated March 27, 2003, for each of the years in issue reflecting their names and Social Security numbers, account balance, accrued interest, and accrued additions to tax as of April 7, 2003.

On June 10, 2003, S. Partridge (Ms. Partridge) in respondent's Laguna Niguel office sent petitioners a letter rejecting their OIC. Ms. Partridge determined that petitioners could pay in full the amount due based on financial information submitted by them.

To demonstrate that they were obtaining funds to pay their tax liabilities, petitioners faxed a letter to Ms. Partridge on June 16, 2003, informing her of the name and phone number of

their loan officer at World Savings who was handling the refinancing of their home.

B. <u>Filing of the Notice of Federal Tax Lien</u>

On June 19, 2003, respondent filed a notice of Federal tax lien against petitioners for income taxes (including interest and additions to tax) for the years in issue. On June 24, 2003, respondent sent each petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 for the years in issue.

On July 3, 2003, petitioners sent a letter to respondent's Laguna Niguel office requesting that their case be forwarded to the Office of Appeals. In their request, petitioners stated that "Mrs. Partridge stated that she would work with me and not file a lien if I would refinance" and that "such a filing would impede my ability to pay taxes".

On or about July 14, 2003, petitioners submitted to World Savings a loan application for approximately $60,000 at an interest rate of 4 percent. On July 16, 2003, World Savings denied petitioners' July 14, 2003 loan application because of petitioners' "poor credit performance with us [World Savings]".

On July 27, 2003, petitioners submitted to respondent a Form 12153, Request for a Collection Due Process Hearing. Petitioners attached to the Form 12153 a statement stating, in part:

> I disagree with the filing of the federal tax lien
> because it has prohibited me from refinancing to pay

the tax debt.  I notified the Internal Revenue Service that I was in the process of refinancing.  I sent a fax to them and the lender so that they could check with the lender to see that this process was in place.  * * *  The Internal Revenue told me that they would work with me and they realized that filing the tax lien would be a hindrance to me getting a loan.  They filed the tax lien anyway.  In addition to the lien causing a rejection for the loan to pay you it also caused a rejection for a line of credit for me to even out my cash flow for the immediate period.

On August 28, 2003, petitioners faxed to the Internal Revenue Service (IRS) Lien Desk a letter requesting a "payoff for the attached lien that will be good until <u>September 30, 2003</u>."

On September 16, 2003, petitioners faxed to Revenue Officer Gloria Owen (Ms. Owen) in respondent's Laguna Niguel office a third request for "a demand to pay off my lien".

On September 23, 2003, Ms. Owen faxed to petitioners computer printouts dated September 18, 2003, for each year in issue reflecting petitioner David Jackson's Social Security number and the balance due including accrued interest and accrued penalties.  The first page had a handwritten notation stating: "total of all years 1995 through 2001 $64,498.17".

At some point in time, petitioners began working with Carol Nguyen (Ms. Nguyen), a settlement officer in respondent's Laguna Niguel office, to obtain a payoff demand for their lender.  On October 10, 2003, Ms. Nguyen faxed to petitioners a document signed by R. Bonzer, Lien Advisor, reflecting petitioners' escrow number, instructions for payment, and their tax liabilities for

each year in issue as of November 11, 2003, as follows:[3]

| Tax Year | Unpaid Balance | Interest | Additions to Tax | Payment |
|---|---|---|---|---|
| 1995 | $16.00 | $2,296.04 | -0- | $2,312.05 |
| 1996 | 839.96 | 470.29 | $147.06 | 1,457.31 |
| 1998 | 14,919.06 | 4,402.99 | 2,193.00 | 21,515.05 |
| 1999 | 2,986.59 | 629.31 | 437.58 | 4,053.48 |
| 2000 | 27,551.08 | 3,163.16 | 2,490.54 | 33,204.78 |
| 2001 | 1,931.03 | 153.89 | 301.29 | 2,386.21 |
| Total | | | | 64,928.88 |

In her cover letter, Ms. Nguyen referred to this document as an "escrow demand letter". The cover letter also requested petitioners to sign an offer withdrawal letter concerning their OIC, which petitioners signed on October 22, 2003.

On or about October 16, 2003, petitioners submitted to World Savings another loan application along with the escrow demand letter. World Savings approved the October 16, 2003 loan application for $64,928.88 at an interest rate of 6.25 percent with a closing date of October 28, 2003.

C. Petitioners' Section 6330 Hearing

On October 28, 2003, petitioners attended a hearing before Appeals Officer J.T. Minor (Mr. Minor). At the hearing, petitioners requested that respondent release the lien because they were refinancing their home to pay in full their tax liabilities, and that respondent abate the additions to tax and the interest for the period during which respondent delayed

---

[3] Although the document appears to be a standard Internal Revenue Service form, it does not indicate a form number.

providing petitioners with an escrow demand letter for their lender.

Mr. Minor abated for reasonable cause $596.02 of the addition to tax for failure to timely pay tax accruing from July 31 to November 30, 2003 as follows:

> 1995, 1996, 1998:  No penalty applicable for this period because the 50-month period for assessment of this penalty has already expired

> 1999:  $48.62 ($2,431 tax due per return multiplied by 2 percent (i.e., .5 percent for 4 months))

> 2000:  $510.88 ($26,144 tax due per return less $600 general tax credit multiplied by 2 percent)

> 2001:  $36.52 ($1,826 tax due per return multiplied by 2 percent)

On October 31, 2003, petitioners paid in full their outstanding income tax liabilities for the years in issue of $64,928.88.

D.  Notice of Determination

On December 11, 2003, respondent sent to each petitioner a Notice Of Determination Concerning Collection Action Under Section 6320 (notice of determination).  In the notice of determination, respondent denied all of petitioners' requests. With respect to petitioners' request to abate interest, respondent denied their request because

> the Jacksons have not fully paid their liabilities. They state that the delay of their refinance caused them to accrue additional interest, but, the refinance was not secured.  Had it been secured, there was insufficient funds available in the refinance to fully

pay their delinquent income tax liabilities.
With respect to petitioners' request to abate the additions to
tax, respondent sustained the abatement of $596.02 of the
addition to tax for late payment because "there was some delay in
providing the taxpayer's timely information regarding the amounts
due on their delinquent income tax liabilities".

E. Petition

On January 12, 2004, petitioners filed with the Court a
petition under section 6330(d) disputing respondent's
determinations. See sec. 6320(c). Paragraph 4 of the petition
states:

> I request that I be relieved from all interest and
> penalties in connection with the tax years described in
> paragraph 2. The CDP Determination Letter attached
> indicated that there was delay in providing the
> taxpayer timely information and therefore abated a
> portion of the failure to pay penalties for reasonable
> cause. The $596.02 did not address the IRS action
> regarding the lien and other damages and costs incurred
> as a result of their actions. I have since acquired a
> loan and paid the taxes of $64,928.88 in full. This
> amount includes $11,115.68 interest and $5,596.47 in
> penalties. I respectfully request a return of the
> interest and penalties less the $596.02 for a total of
> $16,116.13 for cause and hardship.

F. Release of the Lien

On January 30, 2004, respondent released the Federal tax
lien because petitioners paid in full their tax liabilities
including interest and additions to tax for the years in issue.[4]

---

[4] The record does not explain why it took respondent 3
(continued...)

Discussion

Section 6321 imposes a lien in favor of the United States on all property and rights to property of a taxpayer liable for unpaid taxes after demand for payment. Within 5 business days after the day of filing the notice of lien, the Secretary must notify the taxpayer, in writing, that a tax lien was filed and inform the taxpayer of his or her right to a hearing before an impartial Appeals officer. Sec. 6320. Section 6320(c) provides that the Appeals Office hearing generally shall be conducted consistent with the procedures set forth in section 6330(c), (d), and (e). Once the Appeals officer has issued a determination letter, the taxpayer may seek judicial review of the Commissioner's administrative determination. Sec. 6330(d).

A. Abatement of Interest

We have jurisdiction over petitioners' request for abatement of interest because such request was made as part of a section 6330 proceeding. See Katz v. Commissioner, 115 T.C. 329, 340-341 (2000).

This Court may order an abatement of interest if the Commissioner abuses his discretion in failing to abate interest. Sec. 6404(h)(1).[5] The taxpayer must prove that the Commissioner

---

[4](...continued)
months to release the lien.

[5] Sec. 6404(h), formerly sec. 6404(g), is applicable to
(continued...)

exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law. See Rule 142(a); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

As applicable to 1995 and 1996, preamendment section 6404(e)(1) permits the Commissioner to abate all or any part of an assessment of interest on any payment of tax if an error or delay in such payment is attributable to an officer or employee of the IRS being "erroneous or dilatory in performing a ministerial act", and the taxpayer caused no significant aspect of the delay.

As applicable to 1998 through 2001, section 6404(e) permits the Commissioner to abate interest with respect to any "unreasonable" error or delay resulting from "managerial" or ministerial acts. See Taxpayer Bill of Rights 2, sec. 301(a)(1) and (2), Pub. L. 104-168, 110 Stat. 1457 (1996), effective for interest accruing with respect to tax years beginning after July 30, 1996.

Section 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987), defines a "ministerial act" as "a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the

---

[5](...continued)
requests for abatement after July 30, 1996. Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 302, 110 Stat. 1457 (1996).

act, such as conferences and review by supervisors, have taken place." The final regulations under section 6404(e) provide the same definition. See sec. 301.6404-2(b)(2), Proced. & Admin. Regs.[6] The final regulations define a "managerial act" as "an administrative act that occurs during the processing of a taxpayer's case involving the temporary or permanent loss of records or the exercise of judgment or discretion relating to management of personnel." Sec. 301.6404-2(b)(1), Proced. & Admin. Regs.

Petitioners do not dispute that they are liable for the interest that had accrued on their outstanding tax liabilities. Petitioners contend, however, that respondent abused his discretion in not abating interest that had accrued since March 27, 2003, the earliest date that petitioners requested an escrow demand letter. Petitioners argue that had respondent provided them with the escrow demand letter at that time, then petitioners would have been able to refinance their home and to pay in full their tax liabilities. Thus, petitioners contend that respondent's failure to send them the escrow demand letter on March 27, 2003, was an unreasonable ministerial delay.

On or about March 27, 2003, petitioners requested a payoff

---

[6] The final regulations were issued on Dec. 18, 1998, generally effective with respect to interest accruing on deficiencies or payments of tax for tax years beginning after July 30, 1996.

amount to refinance their home to pay their tax liabilities. Respondent sent petitioners a computer printout for each year disclosing their total outstanding tax liabilities, including interest and additions to tax. Petitioners, however, did not submit a loan application for the refinancing of their home until almost 4 months later on or about July 14, 2003, which was rejected on July 16, 2003, because of petitioners' poor performance with World Savings.[7] From March 27 until on or about July 16, 2003, there was no erroneous or dilatory performance of a ministerial act by respondent, nor was there any unreasonable error or delay resulting from any managerial or ministerial act that contributed to a delay in the payment of petitioners' tax liabilities. Under these circumstances, respondent did not abuse his discretion to refuse to abate interest that accrued for that period.

For the period July 31 to November 30, 2003, respondent determined that "there was some delay in providing the taxpayer's [sic] timely information regarding the amounts due on their delinquent income tax liabilities".[8] It is reasonable to assume that the delay in the payment of petitioners' tax liabilities for

---

[7] Petitioners allege that World Savings rejected their loan application because of the lien. The allegation, however, is unproven.

[8] There is no explanation in the record as to the significance of July 31, 2003.

this period was caused by respondent's failure to provide petitioners with an escrow demand letter.[9]  See <u>Douponce v. Commissioner</u>, T.C. Memo. 1999-398 (holding that respondent's failure to provide the taxpayer with a correct payoff amount was a ministerial act that warranted the abatement of interest).

On July 27, 2003, petitioners submitted to respondent a Form 12153 stating that the lien prohibited them from refinancing their home.  On August 28, 2003, petitioners requested another payoff amount, but they did not receive a response from respondent.  Almost 1 month later, petitioners again requested a payoff amount, which they received on September 23, 2003, in the form of computer printouts.  After appealing to an Appeals officer, petitioners finally received an escrow demand letter on October 10, 2003.  Once petitioners received the escrow demand letter, World Savings promptly approved their October 16, 2003 loan application and assigned a closing date of October 28, 2003.  On October 31, 2003, petitioners paid in full their outstanding tax liabilities including interest and additions to tax.

---

[9]  We note that the Internal Revenue Manual, section 25.17.4.4.2 (Sept. 1, 2004), provides a procedure for preparing a Form 10492, Notice of Federal Taxes Due, in the case of an escrow payoff request during a Ch. 13 proceeding.  The Form 10492 contains the identity of the taxpayer, the amounts due for taxes secured by a lien on the property, and calculations for interest and penalties.  Form 10492 enables the escrow company to pay respondent directly from the escrow funds in a sale or refinancing of real property.  A similar procedure appears equally applicable to a refinancing of real property in a non-bankruptcy case.

Based on the entirety of the record, we conclude that there was dilatory performance of a ministerial act by respondent that contributed to an unreasonable delay in the payment of petitioners' tax liabilities from July 31 to November 30, 2003. Accordingly, respondent abused his discretion in refusing to abate interest that had accrued for the years in issue for that period.

B.  Additions to Tax

The income tax assessments against petitioners include additions to tax under section 6651(a)(1) for 1996, 1998, and 1999, and sections 6651(a)(2) and 6654 for all the years in issue.  Petitioners did not have an opportunity to dispute the additions to tax relating to their income tax liabilities; therefore, they can challenge them during the section 6330 proceeding.  Sec. 6330(c)(2)(B).  We review de novo respondent's determination with respect to these additions to tax.  See Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

Petitioners first contend that respondent agreed to waive all additions to tax upon payment in full of their income tax liabilities (including interest and additions to tax) for the years in issue.  In support of their contention, petitioners rely on an alleged oral agreement that they had with Ms. Owen wherein she agreed that respondent would cooperate with petitioners and not file a tax lien as long as petitioners were moving forward

and that respondent would waive the additions to tax if petitioners paid off the total principal balance plus interest. Consistent with this agreement, petitioners paid in full their outstanding tax liabilities for the years in issue. Petitioners allege, however, that respondent did not waive the penalties and thus failed to comply with the agreement.

Sections 7121 and 7122 and the regulations thereunder set forth the exclusive means by which closing agreements and compromises between the Commissioner and a taxpayer concerning the latter's tax liability may be accorded finality. Urbano v. Commissioner, 122 T.C. 384 (2004); Hudock v. Commissioner, 65 T.C. 351, 362 (1975); Rohn v. Commissioner, T.C. Memo. 1994-244; secs. 301.7121-1, 301.7122-1, Proced. & Admin. Regs. A closing agreement or compromise must be submitted on special forms prescribed by the Secretary and is not considered accepted until the taxpayer is notified of the acceptance in writing. Laurins v. Commissioner, 889 F.2d 910, 912 (9th Cir. 1989), affg. Norman v. Commissioner, T.C. Memo. 1987-265; sec. 301.7122-1(d)(1), (3), Proced. & Admin. Regs.

Petitioners admitted at trial that the purported agreement was oral and that they do not have any written document or form to that effect. Based on the record, there was no compliance with section 7121 or 7122. Accordingly, we hold that petitioners and respondent did not enter into a binding agreement to waive

all additions to tax.

In the alternative, petitioners contend that respondent should abate the addition to tax for late payment that accrued from March 27 through July 30, 2003.[10] Petitioners assert that they would have paid their outstanding tax liabilities on or about March 27, 2003, but that respondent failed to timely provide them with an escrow demand letter. Petitioners' contention is misplaced.

Section 6651(a)(2) imposes an addition to tax for failure to pay the amount shown as tax on the return on or before the date prescribed for payment of that tax, unless the failure was due to reasonable cause and not willful neglect. See sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Petitioners may demonstrate reasonable cause for late payment by showing that they exercised ordinary business care and prudence in providing for payment of their tax liability and were nevertheless either unable to pay the tax or would suffer an undue hardship if they paid on the due date. Sec. 301.6651-1(c), Proced. & Admin. Regs.

At the time that petitioners filed their returns, they failed to remit the amount shown as tax. Based on the entirety

---

[10] Petitioners concede that they are liable for the additions to tax for failure to timely file and for failure to pay estimated tax. Petitioners, however, contend that respondent should have also abated the addition to tax for failure to pay from July 31 to Nov. 30, 2003. We note that this addition for those years did not accrue for that period. See sec. 6651(a)(2).

of the record, petitioners have not shown that their failure to timely pay tax was due to reasonable cause and not willful neglect. Therefore, respondent did not improperly refuse to abate the addition to tax for late payment from March 27, 2003, through July 30, 2003.

C.  Petitioners' Claim for Damages

Petitioners claim emotional damages of $10,000 and monetary compensation of $8,406.56,[11] alleging that the premature and unnecessary filing of the lien adversely affected their credit rating, which prevented them from refinancing their home and hindered their ability to pay their tax liabilities; as a result, the lien caused them to incur a loan at a higher interest rate. Petitioners, however, do not cite or rely on any specific statute as a basis for this claim.

Although we recognize that the filing of such a lien may have the negative effects of creating a cloud on the taxpayer's title to property and impairing the taxpayer's creditworthiness, see Magana v. Commissioner, 118 T.C. 488, 490 (2002), we generally have no jurisdiction over such claims, sec. 7433(a); see Gerakios v. Commissioner, T.C. Memo. 2004-203 (holding that

---

[11]  Petitioners calculate this amount as the difference payable over a 10-year term between the 4-percent interest rate on the July 14, 2003 loan application and the 6.25 percent interest rate on the Oct. 16, 2003 loan application (i.e., $725.24 ($64,928.88 tax owed at 6.25-percent amortized over 30 years) less $655.19 ($64,928.88 tax owed at 4-percent amortized over 30 years) multiplied by 10 years equals $8,406.66).

the Court has no jurisdiction over taxpayer's compensatory claim that his credit rating was adversely affected by the filing of a lien); Chocallo v. Commissioner, T.C. Memo. 2004-152 (holding that the Court has no jurisdiction over taxpayer's damages claim for alleged wrongs committed by respondent's employees). If petitioners' claim for monetary compensation were meant to be predicated on section 7432 and/or 7433, which provide for civil damages for failure to release a lien or certain unauthorized collection actions, respectively, we note that such claims must be brought in a District Court of the United States.

D. Conclusion

We have considered all of petitioners' arguments, and, to the extent that we have not specifically addressed them, we conclude that they are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issues,

Decision will be entered
under Rule 155.