T.C. Memo. 2009-264

UNITED STATES TAX COURT

ERNEST ROMERO, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24327-07L.                    Filed November 19, 2009.

Ernest Romero, Jr., pro se.

<u>Cindy Park</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Pursuant to section 6330(d),[1] petitioner
seeks review of respondent's determination to proceed with
collection of his unpaid 2002, 2003, and 2004 income tax
liabilities.  The issue for decision is whether respondent abused

---

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code.

his discretion by sustaining the filing of the notice of Federal tax lien against petitioner.  We find respondent did not abuse his discretion.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Petitioner resided in California at the time he filed the petition.

Background

Petitioner requested and received extensions to file his 2002 and 2003 income tax returns; these returns were due August 15, 2003 and 2004, respectively.  His 2004 return was due April 15, 2005.  Petitioner filed his 2002, 2003, and 2004 income tax returns on or about April 10, April 3, and March 27, 2006, respectively.

On August 2, 2006, respondent mailed to petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (notice of Federal tax lien) regarding tax years 2002, 2003, and 2004.  The notice of Federal tax lien stated petitioner owed liabilities as follows:

| Type of Tax | Tax Period | Amount Owed |
| --- | --- | --- |
| Form 1040 | 12/31/2002 | $5,354.27 |
| Form 1040 | 12/31/2003 | 4,855.34 |
| Form 1040 | 12/31/2004 | 1,724.22 |

On August 31, 2006, petitioner timely submitted Form 12153, Request for a Collection Due Process Hearing (request), regarding 2002, 2003, and 2004 to respondent.

Petitioner's Offer-in-Compromise Proposal

In the request petitioner stated the lien would impair his efforts to procure employment and would damage his credit. He further stated he had previously suggested and again was suggesting the following offer-in-compromise (OIC): if the penalties and interest were waived, he would be able to borrow the money from his father and pay the taxes in full.

Settlement Officer Vic Morel (Officer Morel) was the Appeals settlement officer assigned to petitioner. Petitioner requested a face-to-face collection due process hearing (CDP hearing).

Before the CDP hearing, Officer Morel requested that petitioner submit a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, along with backup documentation and information. Petitioner submitted the requested information, and Officer Morel used it to calculate petitioner's tentative reasonable collection potential (RCP) to be $49,926 (future income value (FIV) of $45,168 plus net equity in assets of $4,758). At the time petitioner's entire tax liability (including years not at issue in the notice of Federal

tax lien) was approximately $29,000.[2]  Officer Morel determined that petitioner's RCP precluded him from having an OIC accepted because he could pay the entire tax liability and the sole basis on which petitioner sought an OIC was doubt as to collectibility.

Officer Morel sent petitioner a letter scheduling the face-to-face CDP hearing and asking petitioner for additional information.  He asked petitioner to explain or describe special circumstances which might affect his ability to pay and to provide the following additional information for his use in recalculating petitioner's RCP:  Income information; bank statements; leases on his rental property; and information on his transportation expenses, health care expenses, and legal expenses.  Petitioner sent Officer Morel most of the information requested and included reports from a psychiatrist and a psychologist to support his claim of special circumstances.

Using this information, Officer Morel decreased petitioner's FIV, which reduced petitioner's RCP from $49,926 to $49,110 (FIV of $44,352 plus asset/equity table value of $4,758).  However, Officer Morel determined on the basis of the reports of the psychiatrist and the psychologist that petitioner did not meet the criteria for special circumstances.  The psychiatrist's

---

[2]  The record is unclear for which tax periods in addition to 2002, 2003, and 2004 petitioner owed tax liabilities. However, tax liabilities for 1993, 1994, 1995, 1999, and 2000 were in uncollectible status.

report stated petitioner would be able to return to work by November 30, 2006, and as of that date, he would be considered fully recovered.  The psychologist's report gave petitioner a guardedly optimistic prognosis and reported that petitioner ceased psychotherapeutic sessions on October 19, 2006.

Face-to-Face CDP Hearing

Officer Morel conducted the face-to-face CDP hearing on July 12, 2007, at the IRS Appeals Office in Los Angeles.  As of July 9, 2007, petitioner's total outstanding tax liability for all periods was approximately $29,000.

Petitioner orally proposed an OIC of $10,000.  Officer Morel explained to petitioner that he did not qualify for an OIC because his RCP exceeded the liability owed, and Officer Morel provided petitioner with copies of the income/expense table, asset/equity table, and the RCP calculation.

Petitioner said he would pay the tax in full if penalties and interest were abated.  Officer Morel explained that, absent reasonable cause or administrative delay, the penalties and interest could not be compromised.  Officer Morel suggested an installment agreement, and petitioner stated he was not interested.

Petitioner did not dispute Officer Morel's finding that he did not meet the criteria for special circumstances.

Post-CDP Hearing

Petitioner contacted Officer Morel after the CDP hearing and questioned the FIV Officer Morel determined and used in calculating petitioner's RCP. Petitioner sent a letter to Officer Morel stating that his monthly income was lower than the figure Officer Morel used and that he expected his disability benefits to terminate in 2 months. Petitioner stated that after his disability benefits terminated, his monthly expenses would exceed his monthly income and he did not understand why he would not qualify for an OIC.

Subsequently, Officer Morel talked with petitioner over the phone and decreased petitioner's FIV, which decreased petitioner's RCP. Initially, in calculating petitioner's FIV Officer Morel included income from three sources: Employment with Venturi Staffing Partners, unemployment benefits, and disability benefits. Petitioner informed Officer Morel that he had worked for Venturi Staffing for only 2 days, and Officer Morel decreased petitioner's FIV by removing this as a source of income. Petitioner also informed Officer Morel that he received unemployment benefits biweekly instead of weekly; Officer Morel adjusted petitioner's FIV to reflect this change in timing. Finally, petitioner informed Officer Morel that he expected his unemployment benefits to terminate in 2 months, but Officer Morel did not adjust petitioner's FIV because it was a future event.

These adjustments resulted in a net decrease in petitioner's FIV from $44,352 to $34,414, which decreased petitioner's RCP from $49,110 to $39,414.

Even with these adjustments, petitioner's RCP still exceeded the tax liability, and Officer Morel determined acceptance of petitioner's $10,000 OIC was precluded by statute and regulations. Officer Morel informed petitioner of this and suggested an installment agreement. Petitioner rejected the installment agreement.

Notice of Determination

On October 2, 2007, Officer Morel issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination). The notice of determination sustained the filing of the lien, stated that petitioner had suggested a $10,000 OIC to satisfy his $29,000 liability and this OIC could not be accepted because it was less than petitioner's RCP of $39,414, and verified that the requirements of applicable laws had been met, that the issues raised had been considered, and that the proposed collection action balanced the need for efficient collection of taxes with the legitimate concerns that such action be no more intrusive than necessary. See sec. 6330(c)(3).

Petitioner timely petitioned this Court for review of the notice of determination sustaining the lien for 2002, 2003, and

2004. Petitioner asserts Officer Morel made his determination with erroneous information and failed to recalculate his RCP once correct information was brought to his attention. Respondent asserts petitioner did not submit an OIC for consideration and Officer Morel properly determined petitioner's ineligibility for an OIC.

## OPINION

### I. Jurisdiction and Standard of Review

Section 6320(a)(1) provides that the Secretary shall furnish the person described in section 6321 with written notice (i.e., the hearing notice) of the filing of a notice of lien under section 6323. Section 6320(a) and (b) further provides that the taxpayer may request administrative review of the matter (in the form of a hearing) within a 30-day period. The hearing generally shall be conducted in a manner consistent with the procedures set forth in section 6330(c), (d), and (e). Sec. 6320(c).

Pursuant to section 6330(c)(2)(A), a taxpayer may raise at the section 6330 hearing any relevant issue with regard to the Commissioner's collection activities, including spousal defenses, challenges to the appropriateness of the Commissioner's intended collection action, and alternative means of collection. Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180 (2000). Where the validity of the underlying tax liability is not at issue, we review the Commissioner's

determination for abuse of discretion. Sego v. Commissioner, supra at 610.

Petitioner does not dispute the underlying tax liability; rather, petitioner disputes respondent's rejection of his alleged OIC. Accordingly, we review this determination for abuse of discretion.

Under an abuse of discretion standard, "we do not interfere unless the Commissioner's determination is arbitrary, capricious, clearly unlawful, or without sound basis in fact or law." Ewing v. Commissioner, 122 T.C. 32, 39 (2004), vacated 439 F.3d 1009 (9th Cir. 2006); see also Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

## II. Offer-in-Compromise

Section 7122(a) authorizes the Commissioner to compromise a taxpayer's outstanding liabilities. The regulations and procedures under section 7122 provide the exclusive method of effecting a binding nonjudicial compromise. Laurins v. Commissioner, 889 F.2d 910, 912 (9th Cir. 1989), affg. Norman v. Commissioner, T.C. Memo. 1987-265; Shumaker v. Commissioner, 648 F.2d 1198, 1199-1200 (9th Cir. 1981) (citing Botany Worsted Mills v. United States, 278 U.S. 282, 288-289 (1929)), affg. in part, revg. in part and remanding per curiam on other grounds T.C. Memo. 1979-71.

Section 301.7122-1(d)(1), Proced. & Admin. Regs., provides:

> An offer to compromise a tax liability pursuant to section 7122 must be submitted according to the procedures, and in the form and manner, prescribed by the Secretary. An offer to compromise a tax liability must be made in writing, must be signed by the taxpayer under penalty of perjury, and must contain all of the information prescribed or requested by the Secretary. * * *

See Nash v. Commissioner, T.C. Memo. 2008-250; Harbaugh v. Commissioner, T.C. Memo. 2003-316; see also Wagner v. Commissioner, T.C. Memo. 1990-443 ("compromise agreements under section 7122 are required to be in writing"); Prakash v. Commissioner, T.C. Memo. 1990-106 (same); Foulds v. Commissioner, T.C. Memo. 1989-29 (same).

An OIC must be submitted on a special form prescribed by the Secretary. Riederich v. Commissioner, 985 F.2d 574 (9th Cir. 1993), affg. without published opinion T.C. Memo. 1991-164; Laurins v. Commissioner, supra at 912. Section 601.203(b), Statement of Procedural Rules, identifies Form 656, Offer in Compromise, as the form required for an OIC:

> Offers in compromise are required to be submitted on Form 656, properly executed, and accompanied by a financial statement on Form 433 (if based on inability to pay). Form 656 is used in all cases regardless of whether the amount of the offer is tendered in full at the time the offer is filed or the amount of the offer is to be paid by deferred payment or payments. * * *

See also Godwin v. Commissioner, T.C. Memo. 2003-289 ("Taxpayers who wish to propose an offer in compromise must submit a Form 656, Offer in Compromise"), affd. 132 Fed. Appx. 785 (11th Cir.

2005); Ringgold v. Commissioner, T.C. Memo. 2003-199 ("settlement of tax liabilities for less than the amount owed requires the completion of Form 656").

Petitioner did not submit a Form 656 or any other writing made under penalty of perjury to compromise his tax liabilities. Petitioner proposed in writing an offer to pay the full amount of the tax in exchange for respondent's waiving penalties and interest. Later, petitioner orally proposed a $10,000 OIC. Petitioner was cooperative in submitting requested documentation to respondent, and using this documentation, respondent was able to calculate petitioner's RCP. Using the information petitioner provided, respondent repeatedly advised him that he would not qualify for an OIC based on his RCP. Without the submission of a formal OIC, we cannot determine whether respondent abused his discretion in sustaining the filing of the lien. See O'Neil v. Commissioner, T.C. Memo. 2009-183. However, assuming petitioner made a formal OIC in either of the amounts he proposed, we would sustain respondent's calculation of petitioner's RCP and find there was no abuse of discretion.

III. Calculation of RCP

Petitioner asserts Officer Morel should have lowered his RCP to reflect the anticipated termination of petitioner's disability benefits.

A compromise based on "doubt as to collectibility" (which petitioner seeks) may be accepted "where the taxpayer's assets and income are less than the full amount of the liability."  Sec. 301.7122-1(b)(2), Proced. & Admin. Regs.  With respect to offers-in-compromise on this basis, we observed in Murphy v. Commissioner, 125 T.C. 301, 309 (2005), affd. 469 F.3d 27 (1st Cir. 2006):

> Generally, under * * * [the Commissioner's] administrative pronouncements, an offer to compromise based on doubt as to collectibility will be acceptable only if the offer reflects the reasonable collection potential of the case (i.e., that amount, less than the full liability, that the IRS could collect through means such as administrative and judicial collection remedies).  Rev. Proc. 2003-71, sec. 4.02(2), 2003-2, C.B. 517. * * *

See also Internal Revenue Manual (IRM), pt. 5.8.1.1.3(3) (Sept. 1, 2005) ("Absent special circumstances, a Doubt as to Collectibility (DATC) offer amount must equal or exceed a taxpayers [sic] reasonable collection potential (RCP) in order to be considered for acceptance.").

The taxpayer's RCP includes realizable equity in assets owned by the taxpayer as well as amounts collectible from the taxpayer's future income after allowing for payment of necessary living expenses.  Id. pt. 5.8.4.4.1.  Generally, where an Appeals employee has followed the Commissioner's guidelines to ascertain a taxpayer's RCP and rejected the taxpayer's collection alternative on that basis, we have found no abuse of discretion.

Lemann v. Commissioner, T.C. Memo. 2006-37; see also Schulman v. Commissioner, T.C. Memo. 2002-129.

Petitioner asserts Officer Morel abused his discretion in calculating petitioner's RCP because Officer Morel did not reduce petitioner's FIV after being informed that petitioner's disability benefits were expected to terminate in 2 months.

The IRM defines future income as an estimate of a taxpayer's ability to pay based on an analysis of gross income, less necessary living expenses, for a specific number of months into the future. IRM pt. 5.8.5.5(1) (Sept. 1, 2005). The IRM instructs the settlement officer to consider the taxpayer's general overall situation including such facts as age, health, marital status, number and age of dependents, level of education or occupational training, and work experience. Id. pt. 5.8.5.5(3). The IRM further states that some situations may warrant placing a different value on future income than current or past income indicates and lists, inter alia, two situations relevant here: Where income will increase or decrease or current necessary expenses will increase or decrease, and where a taxpayer is temporarily unemployed or underemployed. Id. pt. 5.8.5.5(5).

Where income or current necessary expenses will increase or decrease, the IRM instructs the settlement officer to adjust the

amount or number of payments to what is expected during the appropriate number of months.  Id.

Where the taxpayer is temporarily unemployed or underemployed, the IRM instructs the settlement officer to use the level of income expected if the taxpayer were fully employed if the potential for employment is apparent.  Id.  It further states that each case should be judged on its own merit, including consideration of special circumstances or relating to effective tax administration issues.  Id.

We are satisfied Officer Morel judged petitioner's case on the unique circumstances of petitioner's individual situation and did not abuse his discretion in determining petitioner's FIV and RCP.  Officer Morel repeatedly worked with petitioner in petitioner's attempts to become eligible for an OIC.  After a tentative RCP determination revealed petitioner was ineligible for an OIC, Officer Morel asked petitioner to explain special circumstances[3] and provide additional information which could

---

[3]  In some cases the Secretary will accept an offer of less than the reasonable collection potential of the case if there are special circumstances.  Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517.  Special circumstances are:  (1) Circumstances demonstrating that the taxpayer would suffer economic hardship if the IRS were to collect from him an amount equal to the reasonable collection potential of the case or (2) if no demonstration of such suffering can be made, circumstances justifying acceptance of an amount less than reasonable collection potential of the case based on public policy or equity considerations.  IRM pt. 5.8.4.3 (Sept. 1, 2005) (effective tax administration and doubt as to collectibility with special
(continued...)

affect his eligibility for an OIC.  After the additional
information revealed that petitioner did not meet the criteria
for special circumstances and was still ineligible for an OIC,
Officer Morel continued to communicate with petitioner about his
calculations.  After discussing the matter with petitioner,
Officer Morel made adjustments to petitioner's FIV to reflect the
loss of a source of income (Venturi Staffing) and a difference in
the timing of benefits (biweekly), but he did not make an
adjustment to reflect the anticipated termination of petitioner's
disability benefits.

We are satisfied Officer Morel made appropriate adjustments
to petitioner's FIV.  Although pursuant to the IRM Officer Morel
could have decreased petitioner's FIV to reflect the anticipated
termination of disability benefits, he is equally justified in
not decreasing petitioner's FIV.  Petitioner was unemployed and
receiving unemployment and disability benefits when he began
discussing the possibility of an OIC.  Upon receiving two mental
health reports suggesting that petitioner was able to return to
work immediately and was no longer disabled, Officer Morel

---

[3](...continued)
circumstances).  To demonstrate that compelling public policy or
equity considerations justify a compromise, the taxpayer must be
able to demonstrate that, because of exceptional circumstances,
collection of the full liability would undermine public
confidence that the tax laws are being administered in a fair and
equitable manner.  Sec. 301.7122-1(b)(3)(ii), Proced. & Admin.
Regs.

decided not to decrease petitioner's FIV to reflect the anticipated termination of disability benefits.  Where a taxpayer is presently unemployed, the settlement officer is instructed to look to the level of income expected if the taxpayer were fully employed if the potential for employment is apparent.  Although at one time petitioner was unable to work because of his disability, this was no longer the case.  Petitioner was not disabled and was able to work.  Although petitioner anticipated losing a source of income, the unique circumstances of petitioner's situation suggested that petitioner was losing this source of income about the same time as he was gaining the ability to return to work.  Accordingly, we are satisfied that Officer Morel followed the IRM in determining petitioner's FIV and calculating petitioner's RCP and did not abuse his discretion.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.